## Pennsylvania Labor Relations Board, Appellant, *v.* Ficon, Inc.

Argued November 30, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James F. Wildeman,* Assistant Attorney General, for Pennsylvania Labor Relations Board, appellant.

*Leonard M. Sagot,* with him *Ettinger, Poserina, Silverman, Dubin, Anapol & Sagot,* for appellee.

OPINION BY MR. JUSTICE EAGEN, May 28, 1969:

This is an appeal by the Pennsylvania Labor Relations Board (Board) from an order of the Philadelphia Court of Common Pleas reversing an order by the Board enjoining Ficon, Inc., trading as Ye Olde Ale House (Ficon), from interfering with its employees' right to self-organization and collective bargaining and their right to union membership, and directing the re-employment of two employees whom Ficon had discharged. The Board's order was based on a finding that Ficon had committed an unfair labor practice in firing two waitresses, allegedly because of their union activities.

The initial proceedings were instituted when Local 568 of the Hotel, Motel and Club Employees (Union) filed an unfair labor practices charge against Ficon charging violation of §6, subsection 1, clauses (a) and

(c) of the Pennsylvania Labor Relations Act (Act).[1] A hearing was held before a trial examiner of the Board on February 15, 1966. The Board issued its order on May 10, 1966. Upon Ficon's failure to comply with its order, the Board prepared a petition for enforcement of the order. Upon notification of the Board's intention to file the petition for enforcement, Ficon indicated that it would appeal the Board's order to the Court of Common Pleas, and both petitions were filed jointly.

The Court of Common Pleas No. 2 of Philadelphia County (SPAETH, J.) reversed the Board's order and dismissed its petition for enforcement. The court held that the evidence was substantially insufficient either to prove that Ficon knew of the waitresses' union activities or to prove that the waitresses were fired because of their union activities; the court noted that the Board gave no reason in its opinion for disregarding the testimony of all of Ficon's witnesses and held that the Board's order was based on suspicion and conjecture rather than substantive proof. The present appeal challenges the correctness of the court's order. We reverse.

The lower court obviously concluded that the Board's findings should not be sustained unless they were supported by substantial and legally credible evidence. Section 9 of the Pennsylvania Labor Relations Act, Act of 1937, supra, specifies the scope of review permissible by the Common Pleas Court in cases instituted under the statute. Under §9(b), when any *per-*

---

[1] "(1) It shall be an unfair labor practice for an employer— (a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act. . . . (c) By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization: . . . ." Act of June 1, 1937, P. L. 1168, No. 294, §6, as amended, 43 P.S. §211.6.

*son* aggrieved by a final order of the Board petitions the court for review of the Board's action, the court is authorized to determine the *substantiality* of the evidence to support the Board's order. For §9(b) provides that "the findings of the Board as to the facts, if supported by substantial and legally credible evidence, shall in like manner be conclusive." However, §9(a), which controls in instances where the Board petitions the Common Pleas Court for the enforcement of a Board order, provides that "the findings of the Board as to the facts, if supported by evidence, shall be conclusive." A mere reading of §§9(a) and 9(b) indicates an obvious difference with respect to the scope of review; unlike situations under §9(b), in cases where §9(a) controls, the court must sustain the Board's findings if there is mere evidence to support them.[2]

The lower court evidently felt that it was deciding an *individual's* petition for review under §9(b). However, the Board's petition and Ficon's petition were joined. In view of that joinder, the question arises whether the lower court was correct in assuming that it was not bound by the narrow scheme of review contemplated by §9(a).[3] We need not and do not decide this question, because even assuming that the lower court correctly conceived its reviewing function, still it has erred in discharging that function.

---

[2] In this regard, see *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S. Ct. 456 (1951), for a discussion of the scope of judicial review of National Labor Relations Board orders finding unfair labor practices under §8(a)(3) of the National Labor Relations Act.

[3] If §9(a) was appropriate in this procedural posture, the lower court would be powerless to reverse the Board's order here, since there was testimonial evidence by the discharged employees that they were fired because of their involvement with labor movements.

Among other things, §6(1)(c) of the Pennsylvania Labor Relations Act makes it an unfair labor practice for an employer to discriminate against an employee in regard to tenure of employment because of the employees' organizational involvement. Essential to the existence of a §6(1)(c) unfair labor practice is a particular motive on the employer's part—an "anti-union animus." The motive creates the offense.

Our examination of the record discloses that the evidence is at least sufficiently substantial and credible to support the Board's findings that the discharges of the two employees involved resulted from their organizational activities.

Simon and Palantine, the employees, signed union authorization cards on September 15, 1965. They also engaged in soliciting other employees to join the union. On November 3, 1965, they were fired.

Notice of the discharges was delivered to the employees by the manager on instructions from the owner. No reason was then given for the discharges and when pressed for an explanation, the manager told the employees that they would have to see the owner. The next day, the employees confronted the owner and after some evasiveness on his part, the employees were told that it was because of "your outside activities." In the case of Palantine, the owner subsequently phoned her and promised her a job recommendation if she stayed away from her "trouble-making friend." Later on, he gave her a written recommendation stating that she was "very efficient." In view of such testimony, it is clear that the Board's conclusion that the discharges resulted from the employees' union activities was based upon substantial evidence and not upon mere guess and conjecture. The fact that the owner offered conflicting testimony does not, in itself, warrant the setting aside of the findings of the Board. The credi-

bility of the testimony and the reasonable inferences to be drawn therefrom were for the Board. Cf. *N.L.R.B. v. Nevada Consolidated Copper Corp.*, 316 U.S. 105, 62 S. Ct. 961 (1942) ; and *N.L.R.B. v. Texas Mining and Smelting Co.*, 117 F. 2d 86 (5th Cir. 1941).

Nor does the fact that the testimony of Ficon's four witnesses was consistent entitle that testimony to any greater weight than the testimony of the discharged employees. The Supreme Court of the United States, in *N.L.R.B. v. Walton Mfg. Co.*, 369 U.S. 404, 82 S. Ct. 853 (1962), in reversing the Fifth Circuit Court of Appeals, repudiated the test that "the employer's statement under oath must be believed unless there is 'impeachment of him' or 'substantial contradiction', or if there are 'circumstances' that 'raise doubts' they must be 'inconsistent with positive sworn evidence on the exact point.' " By its holding, the Court clearly established that the employer's testimony as to the reason for discharge is entitled to no greater weight than is the employees'; nor need the employer's testimony be laden with inconsistencies before it can be disbelieved and disregarded.[4]

Order reversed and record remanded for action consonant with this opinion.

Mr. Justice JONES dissents.

Mr. Justice MUSMANNO did not participate in the decision of this case.

---

[4] Since the burden of proving an unfair labor practice is on the Board under the N.L.R.A., as well as under the P.L.R.A., the decision cited above is quite helpful. Furthermore, since the P.L.R.A. is patterned after the N.L.R.A., decisions construing the N.L.R.A. establish persuasive guide lines for cases arising under the P.L.R.A. See *Pa. L. R. B. v. Loose*, 402 Pa. 620, 168 A. 2d 323 (1961).