373 A.2d 1069

**ST. JOSEPH'S HOSPITAL, Appellee,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 19, 1976.

Decided June 3, 1977.

James L. Crawford, Raymond W. Cromer, James F. Wildeman, Asst. Attys. Gen., for appellant.

Morgan, Lewis & Bockius, Thomas H. Lane, John D. Thrush, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

On November 8, 1971, two nurses then employed by St. Joseph Hospital were discharged, allegedly for insubordination. On December 7, 1971, and on December 20, 1971, the two nurses, Janet Hutchison and Diane Lesko,

respectively filed, through their union, The Pennsylvania Nurses Association, unfair labor practice complaints with the Pennsylvania Labor Relation Board (Board). The complaints alleged that their discharge was a direct result of their participation in union organizing activities and not because of insubordination. The Board issued complaints on both charges on December 30, 1971, and St. Joseph Hospital answered denying any discriminatory motive. A hearing was held, and a decision and order was entered on May 12, 1972, finding St. Joseph Hospital's discharge of the two nurses was an unfair labor practice in violation of Section 1201 of the Public Employee Relations Act, Act of July 23, 1970, P.L. 563 (43 P.S. § 1101.1201). Exceptions to the findings of fact and conclusions of law were filed by St. Joseph Hospital and dismissed by the Board. St. Joseph Hospital then filed a petition for review with the Court of Common Pleas of Luzerne County, which, by order dated August 10, 1972, allowed the taking of additional testimony. Thereafter, on December 21, 1972, a second petition for review of the Board's order was filed in the Court of Common Pleas by St. Joseph Hospital. On December 6, 1973, the Court, after considering the additional testimony, dismissed the petition and granted enforcement of the final order of the Board. St. Joseph Hospital then appealed to the Commonwealth Court which, by opinion dated December 27, 1974, reversed the Court of Common Pleas and the Board, and held that St. Joseph Hospital was not guilty of any unfair labor practice in its dismissal of nurses Hutchison and Lesko. *St. Joseph Hospital v. P. L. R. B.*, 16 Pa.Cmwlth. 533, 330 A.2d 561 (1974). The Board's petition for allowance of appeal to this Court was granted and this appeal followed.

The only questions raised by this appeal are whether the findings of fact made by the Board, and the inferences and conclusions drawn by the Board from those facts, are supported by "substantial evidence." *See Pa.*

*Labor Rel. Bd. v. Sands Rest. Corp.*, 429 Pa. 479, 240 A.
2d 801 (1968); *Pa. Labor Rel. Bd. v. Kaufmann Dept.
Stores*, 345 Pa. 398, 29 A.2d 90 (1942). The Common-
wealth Court concluded that they were not. We do not
agree, and therefore reverse the order of the Common-
wealth Court and reinstate the order of the Court of
Common Pleas.

Our analysis begins, of course, with some ba-
sics. The complaints alleged unfair labor practices in vi-
olation of the Public Employee Relations Act, Act of July
23, 1970, P.L. 563, No. 195 (43 P.S. § 1101.101). The
complainant in an unfair labor practice suit has the bur-
den of proving the charges alleged. *Union Trust Compa-
ny of Pittsburgh's Petition*, 342 Pa. 456, 20 A.2d 779
(1941). On review, the appellate court must examine
the entire record. *PLRB v. Ficon*, 434 Pa. 383, 254 A.2d
3 (1969). The scope of the appellate court's review is
limited to a determination of whether the findings of the
Board are supported by "substantial evidence," and
"whether the conclusions drawn from those facts are
reasonable and not capricious, arbitrary, or illegal." *Pa.
Labor Rel. Bd. v. Sands Rest. Corp.*, 429 Pa. 479, 240 A.
2d 801 (1968); *Pa. Labor Rel. Bd. v. Kaufmann Dept.
Stores*, 345 Pa. 398, 29 A.2d 90 (1942). Determinations
of which witnesses are credible, and the weight, if any,
to be given to a particular witness's testimony are prop-
erly to be made by the Board, not the courts. As we
stated in *Pennsylvania Labor Relations Board v. Butz*,
411 Pa. 360, 375, 192 A.2d 707, 715 (1963):

> "A reviewing Court is always hesitant to upset the
> factual findings of a jury or even of a judge sitting
> without a jury because of the difficulty of ascertaining
> from the bare words of the record the nuances that
> might well overturn any credit that might be given to
> the spoken word. Such is particularly true in the re-
> view of findings of administrative tribunals, where the
> law has entrusted the ascertainment of the facts to

persons presumably selected for their experience and expertise who are . . . better qualified than any Court to make a factual finding on a subject within their field."

A review of the relevant facts as disclosed by the record, and the reasonable inferences to be drawn from them, will illustrate that the Commonwealth Court exceeded the proper scope of appellate review by overturning two key findings made by the Board.

At about 7:00 a. m., on November 8, 1971, Hutchison and Lesko reported for work in the St. Joseph Hospital's Intensive Care Unit (I.C.U.). Two patients were there to be attended, and two other nurses were then on duty: Sister Eligia, who was the Supervisor of the I.C.U. and Nurse Kessel. Nurse Kessel left immediately to report to the third floor. Within ten minutes after Nurse Kessel's departure, Nurse Lesko answered a telephone call from Sister Nathaneal, Director of Nursing Services, who instructed either Nurse Lesko or Nurse Hutchison to report to the third floor to help patients there. Nurse Lesko questioned this directive and pointed out that Nurse Kessel had already left the I.C.U. to help on the third floor, and that there were presently two patients in I.C. U. with a third on the way. Sister Nathaneal replied that she was aware of these facts but that she still wanted another nurse to report to the third floor at once. Despite this directive, neither Nurse Lesko nor Nurse Hutchison reported to the third floor at that time. They testified that they felt the departure by either would leave the I.C.U. understaffed, since the I.C.U. already contained two patients and a third high-risk cardiac patient was soon to be admitted. The two nurses consulted with their immediate supervisor, Sister Eligia, and expressed their concern to her. Sister Eligia recommended that Lesko and Hutchison wait until Sister Nathaneal had finished her rounds on the fifth floor, and then speak directly to her. After waiting approximately fif-

teen minutes, the two nurses paged Sister Nathaneal, having first obtained Sister. Eligia's permission. At approximately 7:30 a. m., Sister Nathaneal arrived at the I.C.U., and Lesko and Hutchison again expressed their concern that the I.C.U. would be understaffed if either departed, and asked who would bear the responsibility if anything happened to an I.C.U. patient. Sister Nathaneal assured them that she would be responsible. After receiving this assurance, Nurse Lesko reported to the third floor. Later that day, both Lesko and Hutchison were called to Sister Nathaneal's office and were discharged for insubordination for failure to immediately respond to Sister Nathaneal's order for either Lesko or Hutchison to report to the third floor.

In her testimony before the Board, Sister Nathaneal outlined her standard policy in reprimanding and discharging nurses. She stated that when a nurse doesn't do as instructed, that nurse is first orally reprimanded. The oral reprimand is followed by a written reprimand, and ordinarily a nurse isn't discharged until that nurse has received three written reprimands. Neither Lesko nor Hutchison ever received a written reprimand during their employment with the respondent. Furthermore, Sister Nathaneal stated that, prior to the discharges of Hutchison and Lesko, no nurse had ever been discharged without having first received three written reprimands.

Sister Nathaneal also testified that prior to the discharge, she was aware of union organizing activities within the hospital, and that a Nurse Stich, who works in the I.C.U. was the chief organizer. She also stated that Nurses Lesko and Hutchison worked closely with Nurse Stich in I.C.U. At the original hearing, Sister Nathaneal also testified that she was opposed to collective bargaining for registered nurses and that she would do anything within her power to avoid having a union in the hospital.

Lesko and Hutchison testified that certain surveillance activity occurred during the time period when union-organizing activity was taking place, and that this surveillance was being carried out by certain hospital supervisory personnel who reported directly to Sister Nathaneal.

The representation election, which proved successful, was held on August 12, 1971, approximately three months prior to the discharge.

In reversing the Board's order, the Commonwealth Court overturned the following key findings made by the Board: (1) that Sister Nathaneal knew of the union activities of the two discharged nurses, and (2) that her anti-union attitude combined with this knowledge to motivate the discharges.

The Board admittedly relied on inferences in order to make the above two findings. The one inference was that Sister Nathaneal knew of the two nurses' organizing activities because of their close working relationship with Nurse Stich in the I.C.U., and because a group of nurses from the I.C.U., led by Nurse Stich, spearheaded the extensive organizing drive throughout the hospital. This union activity continued over a considerable time period up to the time of the election, which occurred three months before the complained of discharges. During this time, Sister Nathaneal was in charge of the entire nursing staff, and responsible for its operation. During this time period, seven department supervisors, one of which was the Supervisor of the I.C.U. reported directly to Sister Nathaneal. The testimony indicated that these supervisors began watching the nurses more closely after the union organizing activity began than had been their prior practice. The I.C.U. was normally staffed by no more than three nurses and a supervisor. From these facts, the Board concluded that any knowledgeable administrator would necessarily have known

which of the people on a staff of this size were engaged in union organizing activities.

We agree with the Board that there was sufficient evidence to support the finding that Sister Nathaneal knew of the union organizing activities of Nurses Hutchison and Lesko, despite Sister Nathaneal's testimony to the contrary. It is the province of the Board, not the courts, to make credibility determinations. The Board obviously chose not to believe Sister Nathaneal's version on this point, and their conclusion that the complainants sustained their burden of proving that Sister Nathaneal knew of the union activities of Hutchison and Lesko, is, we believe, supported by "substantial evidence."

The other key finding made by the Board was based on Sister Nathaneal's admitted opposition to a nurses' union, and her admitted policy of giving three unwritten reprimands prior to discharge. From these facts, the Board inferred that Lesko and Hutchison, who were involved in union organizing activities, and who were discharged without having received any written reprimands, were discharged because of their union activities. The Commonwealth Court felt that these were not reasonable inferences and that the record did not contain substantial and legally credible evidence upon which the Board could support its finding and conclusion. In so concluding, the Commonwealth Court stated that,

". . . Sister Nathaneal's stated reason for the discharges was substantial. In a hospital situation, orders must be carried out promptly and failure to carry out orders in such a situation can appropriately be termed 'insubordination,' especially where, as here, the failure extended for a period of more than a half-hour. 'Insubordination,' of course, was clearly a valid basis for discharge without warning or notice, and the nurses had been so advised in writing when they were hired."

This conclusion overlooks the fact, as admitted by Sister Nathaneal, that these written discharge rules were not enforced prior to the discharges of Hutchison and Lesko. Furthermore, it overlooks the statement of Sister Nathaneal that she considered it a nurse's professional duty to question any directive that they considered might endanger a patient. From these facts the Board concluded that Hutchison and Lesko's actions did not constitute insubordination despite Sister Nathaneal's testimony to the contrary. In so concluding, the Board obviously disbelieved Sister Nathaneal's testimony as to her reasons for discharging Hutchison and Lesko. This conclusion by the Board was, we believe, also based on "substantial evidence" and the Commonwealth Court erred in substituting its judgment for that of the Board, as to whose testimony to believe.

The order of the Commonwealth Court is reversed and the order of the Court of Common Pleas is reinstated.

NIX, J., did not participate in the consideration or decision of this case.

JONES, former C. J., did not participate in the decision of this case.