Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellant v. Stairways, Inc., Appellee.

Argued November 20, 1980, before Judges Wilkinson, Jr., MacPhail and Williams, Jr., sitting as a panel of three.

*James L. Crawford,* with him *Mary Teresa Gavigan,* for appellant.

*Lee C. Fuller, Carney, Good, Brabender & Walsh,* for appellee.

OPINION BY JUDGE MACPHAIL, February 5, 1981:

The Pennsylvania Labor Relations Board (PLRB) appeals from an order of the Court of Common Pleas of Erie County that reversed the final order of the PLRB and dismissed the complaint against Stairways, Inc. (Stairways). The PLRB's order held that Stairways had committed unfair labor practices in violation of Sections 1201(a)(1) and (3) of the Public Employe Relations Act (PERA),[1] by discharging its employee, James Hoffman (Hoffman), because of his union ac-

---

[1] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§1101.1201(a)(1) and (3). This section reads in pertinent part as follows:

> (a)  Public employers, their agents or representatives are prohibited from:
>
> (1)  Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.
>
> ....
>
> (3)  Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization.

tivities. We reverse and affirm the order of the PLRB with modification.

Hoffman was hired August 1, 1973 by Stairways, a social service agency offering rehabilitative services to emotionally disturbed individuals. He was a therapeutic activities worker until his discharge on March 30, 1977. In July of 1976, Hoffman began to encourage employees of Stairways to join a union. He conducted several organizational meetings utilizing Stairways' facilities having first obtained their permission to do so. The first such meeting was held September 20, 1976. Management representatives of Stairways were present at at least one of those early meetings and were at all times aware of Hoffman's union activities. At the first organizational meeting, the Executive Director (Director) of Stairways discussed the futility of organizing Stairways alone, independent of the county mental health and mental retardation system. On September 29, 1976, the Director issued a five page memorandum to all employees entitled "Fact Sheet and Analysis." Included in that memorandum was a statement of Stairways' position on unionization which reads as follows:

ON UNIONIZATION—One point that should be made clear to all employees. Should an election be held for a union at Stairways, those employees who do not desire the union *must vote 'No.'* The reason for this is that determination of union or non-union status depends only upon a majority vote of those eligible persons *who actually vote.* As a result, if you have doubts or don't want the union, the only way you can prevent it is by voting *'NO.'* Failure to vote means you have no voice in the process.

Finally, at the risk of raising your anti-authoritarian feelings, I do want to make it clear that I do not support or endorse an at-

tempt to unionize Stairways singularly. I would also like to note that I do not view it as a personal struggle or battle in as much as I have been able to discover very little that I could lose personally through your unionization. You should keep in mind that the union has nothing to lose and everything to gain by its attempt. However, I do not see our agency, its clients, or its employees enjoying that particular luxurious position.[2] (Emphasis in original.)

On September 30, 1976, The Pennsylvania Social Services Union (PSSU) filed a petition for representation with the PLRB for the employees of Stairways. Hoffman continues to sponsor union meetings for the employees and also represented the union at grievance proceedings for some employees who had been

---

[2] Other excerpts from the memorandum pertinent to the issues in this case are:

As you know, I have expressed great concern about the effect of unionization on Stairways program alone. I think that given an overall perspective, my concern is warranted, although each employee will have to arrive at his own assessment of the facts. I have been impressed that many employees are attempting to arrive at an objective analysis of their position and the position of the agency and are not necessarily being led by the anxieties, strivings, or vested interested of a few.

. . . .

In summary, though Stairways may be somewhat behind some agencies in terms of salary increments, we still have been able to secure and maintain a combination of salary and benefits *which is far ahead of that of many social agencies* in this County. We also have been able to create what we feel to be a general set of good working conditions and a good working atmosphere and are very interested in being able to maintain and improve that atmosphere. *If there are non-economic issues which have not been aired through our grievance procedure and perhaps corrected, do we need a union to accomplish that?* (Emphasis in original.)

furloughed because of funding problems. In November of 1976, Hoffman helped present the union's position at the Board hearing on the PSSU petition for representation. In early 1977, Hoffman and another pro-union employee were told by the Director that their jobs "were on the line and in jeopardy."

It was Stairways' policy to conduct employment evaluations of all its employees. Prior to August 17, 1976, Hoffman had undergone four such evaluations following which he received salary increases and, in one instance, a promotion. On August 17, 1976, Hoffman's evaluation by his immediate supervisor resulted in his being placed on probation although he also received a salary increase. On March 18, 1977, he received a second evaluation by his immediate supervisor as a result of which he was discharged on March 30, 1977.

PSSU filed charges of unfair labor practices against Stairways with PLRB. Six days of hearings were held before a PLRB hearing examiner. On October 20, 1978, the PLRB issued a nisi decision and order in which it found Stairways had violated Sections 1201(a)(1) and (3)[3] of PERA and ordered and directed Stairways to reinstate Hoffman with back pay. Stairways' exceptions to the PLRB order were dismissed and a final order entered whereupon Stairways filed a Petition for Review with the Court of Common Pleas of Erie County. That court reversed the PLRB and dismissed the complaint against Stairways on the ground that the Board's findings were not supported by substantial evidence.[4]

---

[3] See footnote 1.

[4] The trial court perceived its scope of review to be found in 2 Pa. C. S. §704. It must be noted, however, that 2 Pa. C. S. §701(b)(2) states that none of the provisions of subchapter 7, 2 Pa. C. S. §§701-704, apply to an appeal from a Commonwealth agency to a court of common pleas. It appears that the correct scope of

The PLRB has the exclusive function to decide cases arising under PERA.[5] The law is well settled in unfair labor practice cases. The burden of proof is upon the complainant. *St. Joseph's Hospital v. Pennsylvania Labor Relations Board,* 473 Pa. 101, 373 A.2d 1069 (1977). Our Supreme Court defined the function of the PLRB as "not only to appraise conflicting evidence, to determine the credibility of witnesses, and to resolve primary issues of fact, but also to draw inferences from the established facts and circumstances...." It is also well established that a reviewing court should not "lightly substitute its judgment for that of a body selected for its expertise whose experience and expertise make it better qualified than a court of law to weigh facts within its field." *Pennsylvania Labor Relations Board v. Butz,* 411 Pa. 360, 377, 192 A.2d 707, 716 (1963).

In order to determine whether an employee has been discharged because of union activities, it is essential to determine whether the employer has displayed "anti-union animus." "The motive creates the offense." *Pennsylvania Labor Relations Board v. Ficon,* 434 Pa. 383, 388, 254 A.2d 3, 5 (1969). In finding anti-union animus in the instant case the PLRB relied primarily on the five page memorandum sent by the Director to the employees. Logic dictates that an employer need not stand mute when employees are seeking to join a union.[6] Indeed, the employer has a First Amendment

---

review is set forth in 42 Pa. C. S. §5105(d)(2). Nevertheless, we deem it necessary to reach the merits of the instant appeal because our conclusion with respect to the substantial evidence issue would necessarily require the same result if the correct scope of review had been used by the trial court.

[5] Section 501, 43 P.S. §1101.501.

[6] It should be noted that Section 8(c) The National Labor Relations Act, Act of July 5, 1935, Ch. 372, 49 Stat. 449, *as amended.* 29 U.S.C.A. §158(c) (West 1973) provides:

right under the Constitution of the United States to communicate his general views to his employees. *National Labor Relations Board v. Gessel Packing Co.*, 395 U.S. 575 (1969). The expression of the employer's views, however, should include no actual or veiled threat of reprisal or benefit to the employees. In *Gessel,* the United States Supreme Court said that

> Any assessment of the precise scope of employer expression, of course, must be made in the context of its labor relations setting. Thus, an employer's rights cannot outweigh the equal rights of the employees to associate freely, as those rights are embodied in [the National Labor Relations Act].... And any balancing of those rights must take into account the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear.

*Id.* at 617.

Th PLRB also relied on the statement made by the Director to Hoffman and his fellow employee that their "jobs were on the line and in jeopardy." Although conflicting evidence was presented as to whether the Director was referring to funding difficulties or the men's union activities, the PLRB chose to believe the latter. That determination by PLRB was an exercise of its proper function.

---

> The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force of promise of benefit.

Although the PERA does not contain a similar provision, this does not mean that the employer must remain silent.

Upon examination of the record within this framework, we hold that there is substantial evidence on the record to support the PLRB's finding of anti-union animus and that the conclusion of the trial court to the contrary was in error.

In order to find an unfair labor practice in the instant case, it is also necessary to examine the employer's explanation for the discharge for it is well established that "a discharge of employees following closely on the heels of an employer display of anti-union animus combined with an insubstantial employer explanation for these discharges is a sufficient evidentiary foundation for a finding that the employer has committed an unfair labor practice." *Pennsylvania Labor Relations Board v. Sand's Restaurant Corp.*, 429 Pa. 479, 487, 240 A.2d 801, 805 (1968).

Stairways contends that Hoffman was discharged because he failed to pass certain employee evaluations. Our review of the record shows that the merit of the employee evaluation system was continuously in issue at all of the six hearings. The record shows that the evaluation and scoring were completely subjective. The first low score was given Hoffman scarcely one month after his union activities began. He was discharged eight months after those activities began and while he was heavily involved in them. The record also discloses that the evaluation of another employee had been modified by her supervisor on one occasion to prevent that employee from being placed on probation. From that fact, the PLRB concluded that Stairways did not always rely on its own evaluations. Finally, the PLRB converted Hoffman's raw scores to percentage ratings which indicated that Hoffman's performance had not diminished substantially from his original evaluations. Again, contrary to the trial court, we find that there is substantial evidence on the record to support the

PLRB's finding that Stairways' explanation for the discharge was insufficient.

Since we have also found the Board's finding of anti-union animus to be supported by substantial evidence and that the discharge of Hoffman followed soon after Stairways' display of anti-union animus, the holding in *Pennsylvania Labor Relations Board v. Sands Restaurant Corp., supra,* is controlling. Accordingly, we find that the employer has committed an unfair labor practice.

In its order, the PLRB awarded Hoffman back pay with deductions for net earnings, if any, earned or which with the exercise of due diligence, he would have earned in other employment and earnings he would have lost through sickness. Stairways argues that any unemployment compensation benefits received by Hoffman during that period should also be deducted from the back pay. We agree.

The powers of the PLRB are remedial in nature and not punitive. *Appeal of Cumberland Valley School District,* 483 Pa. 134, 394 A.2d 946 (1978). The purpose of the award of back pay is to make the employee whole, not to give the employee a windfall. This Court has held that school districts are entitled to set off earnings from other sources including unemployment compensation benefits against any compensation due. *Shearer v. Secretary of Education,* Pa. Commonwealth Ct. , 424 A.2d 633 (1981). Since the two situations are similar, common sense dictates that unemployment compensation benefits should also be deducted for awards of back pay granted by the PLRB. We therefore modify the order of the PLRB insofar as it has not included a set off for unemployment compensation in the award of back pay.[7]

---

[7] Sections 704 and 705 of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937)

For the reasons set forth above, we reverse the order of the Erie County Court of Common Pleas dated December 21, 1979 and reinstate with modification the final order of the Pennsylvania Labor Relations Board entered March 26, 1979.

ORDER

AND Now, this 5th day of February, 1981, the order of the Court of Common Pleas of Erie County entered December 21, 1979 to No. 1562-A-1979 is reversed and the final order of the Pennsylvania Labor Relations Board entered March 26, 1979 is reinstated except that Stairways, Inc. shall be permitted to take credit for unemployment compensation benefits, if any, received by James Hoffman subsequent to his discharge and by reason thereof on March 30, 1977.

---

2897, *as amended,* 43 P.S. §§864, 865 provides the procedure for Stairways to receive appropriate credit in the Unemployment Compensation Fund.