528 A.2d 1024

Ruth Harbaugh et al., Petitioners *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

Argued April 22, 1987, before President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS, and PALLADINO.

*Anthony C. Busillo, II, Mancke, Lightman & Wagner,* for petitioners.

*James L. Crawford,* for respondent.

*Stuart W. Davidson,* with him, *Gary R. Gordon, Kirschner, Walters* & *Willig,* for intervenor, American Federation of State, County and Municipal Employees, Council 13.

*Frank P. Clark,* Assistant Counsel, with him, *John D. Raup,* Chief Counsel, for intervenor, Office of Administration and Office of the Budget.

OPINION BY JUDGE DOYLE, July 16, 1987:

This is an appeal by certain public employees (Complainants) from an order of the Pennsylvania Labor Relations Board (Board) affirming a hearing examiner's determination that the Commonwealth of Pennsylvania, Department of Public Welfare (DPW) did not commit an unfair labor practice in violation of Sections 1201(a)(1) and 1201(a)(3) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.1201(a)(1) and §1101.1201(a)(3). Section 1201(a)(1) prohibits public employers, their agents or representatives from "[i]nterfering, restraining or coercing employes in their exercise of the rights" guaranteed under Article IV of PERA (pertaining to employes' rights to organize or join employee organizations, engage in lawful concerted activities, and bargain collectively). Section 1201(a)(3) prohibits them from "[d]iscriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization."

Following three days of hearings, the hearing examiner found that Complainants were employed by DPW at the South Mountain Restoration Center (Center), a long-term care nursing home licensed under the Department of Health. The Center is responsible for accepting individuals who have been discharged from

state mental hospitals, but for whom community placement is not available. It provides intermediate and skilled care for those individuals who are later placed elsewhere, and lifetime care for those who are not.

To understand the theory under which the Complainants proceed, some factual background is necessary. In August of 1980 four Activity Aide II employees from the Center filed a job classification grievance seeking to be reclassified upward to Therapeutic Recreational Service Worker (TRSW). Such reclassification was implemented in November of that year, and was followed two or three months later by the reclassification of all the Activity Aides to TRSWs. Prior to this upward reclassification, these employees had been represented by the Association of Federal, State, County and Municipal Employees (AFSCME); subsequent to the reclassification, however, the employees became part of the professional bargaining unit represented by the Pennsylvania Social Services Union (PSSU).

Certain Licensed Practical Nurses, who are also employed at the Center, thereafter complained to their union, AFSCME, that they believed they were doing work similar to that of the TRSWs and, therefore, were desirous of being reclassified to the TRSW job classification, which carried with it a pay increase and better working hours. Subsequently, all LPN Is and LPN IIs, as well as Restoration Aides and Restoration Aide Trainees, filed classification grievances via AFSCME on April 28, 1981, seeking reclassification upward. These grievances were processed up to the fourth level, but as of the hearings in the instant matter (the last hearing was held on April 16, 1985), the matter had not yet gone to arbitration.

On November 3, 1982, approximately six weeks after becoming the Center's Administrator, Bruce Darney proposed a reorganization of the Center that would have

required the furlough of seventeen individuals, two Activity Aides represented by AFSCME[1] and fifteen TRSWs represented by PSSU. This plan was accepted and a furlough was implemented effective March 11, 1983.

Complainants' theory of the case is that the LPNs, through AFSCME, applied "pressure" on the Commonwealth to furlough the seventeen individuals, the pressure being in the form of a substantial wage increase that the Commonwealth would be responsible for should AFSCME ultimately prevail in its classification grievance. The hearing examiner concluded that even if this were true, no violation of PERA was thereby established and, accordingly, recommended dismissal of the complaint. Exceptions were filed before the Board, which determined that the record did not support a finding of the alleged PERA violations. It specifically concluded that there was no proof that AFSCME sought the furlough of the seventeen individuals and that there was no evidence of a "deal" between AFSCME and the Commonwealth. Instead, the Board determined that the Commonwealth's decision to furlough the existing TRSWs was based upon its own management considerations.

On appeal here the Complainants, all of whom are employees who have been either furloughed or demoted by DPW's personnel actions, argue (1) that the Board's decision is irreconcilably in conflict with the hearing examiner's findings and discussion; (2) that economic pressure is not a valid defense to a charge of discrimination against one union in favor of another; and (3)

---

[1] Although the referee found that all Activity Aides had been reclassified to TRSWs in 1980, he also found that two Activity Aides were suggested for furlough in 1982 and were in fact furloughed. We cannot explain this apparent inconsistency, but it does not appear to be a basis for the appeal.

that the Board determination contravenes the public policy favoring resolution of contract disputes via arbitration. Our scope of review of an adjudication of a statewide administrative agency is limited to determining whether there has been a constitutional violation or an error of law, and whether the findings of fact are supported by substantial evidence on the record. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986); Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.[2] In the instant case the substantiality of the findings is not challenged by Complainants. Therefore, we need review only the legal conclusions.

It is clear that in an unfair labor practice charge, the complainants bear the burden of proof, *St. Joseph's Hospital v. Pennsylvania Labor Relations Board,* 473 Pa. 101, 373 A.2d 1069 (1977), and that in an allegation of a Section 1201(a)(3) violation, the complainants must establish that the employer displayed anti-union animus. *Pennsylvania Labor Relations Board v. Stairways,*

---

[2] Although our Supreme Court has previously enunciated the appellate scope of review to be whether the Board's findings are supported by substantial evidence and whether the conclusions drawn from those facts are reasonable and not capricious, arbitrary or illegal, *St. Joseph's Hospital v. Pennsylvania Labor Relations Board,* 473 Pa. 101, 373 A.2d 1069 (1977), *McGovern* instructs that its pronouncements apply to all adjudications of state-wide agencies brought under the Administrative Agency Law. Further, *St. Joseph's Hospital* involved *an unfair labor practice case that was first appealed to the common pleas court.* We believe, however, that *McGovern* must apply to PERA cases where the appeal of a Board determination is directly to this Court. We do not hold that cases arising under PERA that go first to the common pleas court, *see, e.g., Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981), are affected by *McGovern. See also Pennsylvania Labor Relations Board v. Stairways, Inc.,* 56 Pa. Commonwealth Ct. 462, 466-67 n. 4, 425 A.2d 1172, 1174 n. 4 (1981).

*Inc.,* 56 Pa. Commonwealth Ct. 462, 425 A.2d 1172 (1981).

With respect to Complainants' first contention, *i.e.,* that the Board's decision conflicts irreconcilably with the referee's findings and discussion, we find the contention to be without merit. The hearing examiner determined that AFSCME, in pursuing its own classification grievance, put economic pressure upon the Commonwealth because AFSCME's ultimate success would cost the Commonwealth money due to the upward reclassification. Nowhere did the hearing examiner determine that any "deal" was made between the Commonwealth and AFSCME, or that the economic pressure on the Commonwealth was anything more than the natural result of AFSCME seeking to exercise its right to grieve for the benefit of its members. Moreover, our own review of the record discloses that the *only* evidence of any deals or unlawful pressure is in the form of totally unsupported speculation by some witnesses. Accordingly, we disagree with Complainants' assertion that the Board's conclusions cannot be reconciled with the findings and discussion of the hearing examiner.

Complainants next assert that economic pressure is not a valid defense to the furlough action here. This position presupposes that the reason for the furlough was economic pressure. There is evidence of record to show that the furlough (which we note occurred more than two years after PSSU asserted its rights, *cf. Stairways),* was implemented subsequent to a reorganization plan effectuated in order to improve performance in the Activities Department of the Center and to improve management efficiency. Additionally, there is evidence that such a move had been contemplated even before Complainants filed their 1980 grievance. However, no specific findings were made on these points. We shall, therefore, assume that the furlough actions were a re-

sponse to economic pressure. Even if, however, the Commonwealth based its furlough decision upon such pressure, we do not believe that this alone constitutes a violation of PERA. Were we to so hold, we then would be reading PERA to require the Commonwealth to make economically unsound decisions, lest it be found to violate Section 1201. Such a result is absurd. Section 101 of PERA, 43 P.S. §1101.101, contains the Act's declaration of public policy and clearly establishes that while the Act's purpose is to promote orderly and constructive relationships between public employees and their employers, such goal is subject to "the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their . . . welfare." How the public welfare could be served where the Commonwealth is not permitted to bow to the realities of the marketplace when making personnel decisions, we cannot imagine. We emphasize, however, that the facts found here contain no indication of undue influence, coercion or unlawful pressure. Should there have been findings of economic pressure unlawfully applied (for example, findings that the Commonwealth promised AFSCME to furlough PSSU employees in return for a promise not to strike), our result might be different. As we have previously noted, aside from witness speculation, there is absolutely no evidence that such was the case. We thus hold that, even if the Commonwealth's determination to furlough PSSU employees stemmed from economic pressure, no violation of Section 1201 of PERA occurred as a result.

Further, because we have determined that the furlough was based upon mere economic pressure and was not violative of Section 1201, and, additionally, that the furlough decision was based upon economic realities that were in the best interest of the general public, we must reject Complainants' argument that our result is in contravention of public policy.

414

Based upon the foregoing, the decision of the Board is affirmed.[3]

ORDER

Now, July 16, 1987, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is hereby affirmed.

_____

[3] It is evident that the numerous National Labor Relations Board cases cited by Complainants involve some overt *unlawful* act of pressure by employees upon management and are therefore distinguishable from this situation, where the only pressure was the natural economic pressure that occurs when employees seek to be upgraded. We again emphasize that there is no evidence of an AFSCME/Commonwealth "deal", nor an AFSCME threat to strike unless PSSU members were the furloughees.