532 A.2d 60

Association of Pennsylvania State College and University Faculties, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.

Argued April 20, 1987, before Judges MACPHAIL and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*Elliot A. Strokoff*, with him, *James L. Cowden, Handler, Gerber, Johnston, Strokoff & Cowden,* for petitioner.

*James L. Crawford*, for respondent.

OPINION BY JUDGE BARRY, October 13, 1987:

The Association of Pennsylvania State College and University Faculties (APSCUF) the petitioner, appeals an order of the Pennsylvania Labor Relations Board (Board) which affirmed and made final a proposed decision and order of a hearing officer who held that the State System of Higher Education, Commonwealth of Pennsylvania, Edinboro University (SSHE) had not engaged in an unfair labor practice contrary to the provision of Section 1201(a)(1) and (8) of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, 43 P.S. §§1101.101-1101.2301. (PERA).

The APSCUF, a duly certified collective bargaining agent under the PERA, had filed a grievance pursuant to the collective bargaining agreement against the SSHE, an employer under the PERA, after the SSHE laid off Dr. Richard O. Davis, a faculty member represented by the APSCUF, on May 28, 1982. In the meantime, the Pennsylvania Unemployment Compensation Bureau determined that Dr. Davis was entitled to unemployment compensation benefits beginning on May 29, 1982.

On January 12, 1984, an arbitrator found in favor of Dr. Davis in connection with the grievance that had been filed. The award of the arbitrator read as follows:

. . . Grievant Davis shall be reinstated without loss of seniority. He shall be made whole for wages and benefits lost.

On September 21, 1984, Jerry W. Boyle, Assistant Personnel Director at Edinboro University issued to Dr. Davis a memorandum discussing the retroactive

pay award. According to this memorandum, Dr. Davis, after various deductions were made from his gross back wages and the refund given to him for funds which he had removed from his retirement account during his layoff period, was not entitled to any net back wages. One of the deductions made by the SSHE in its computation was for unemployment compensation benefits received by Dr. Davis during the period of May 29, 1982 to August 21, 1982, which constituted the summer weeks between the 1981-1982 and 1982-1983 academic years.

The APSCUF then filed a complaint with the Board alleging that the SSHE had committed an unfair labor practice under the PERA by failing to comply with the arbitrator's award when it deducted from Dr. Davis' back pay the amount of unemployment compensation benefits received by Dr. Davis during the period of May 29, 1982 to August 21, 1982. Thereafter the Board issued a Complaint and Notice of Hearing. When the case was not resolved through conciliation, a hearing was held before a hearing examiner. The hearing examiner issued a proposed decision and order finding that the SSHE had complied with the arbitrator's order. The APSCUF then filed exceptions to the hearing officer's recommendations. These were dismissed by the Board, which affirmed and made final the proposed decision and order of the hearing examiner. This appeal then followed.

Our scope of review in this matter is limited to determining whether or not the factual findings are supported by substantial evidence and whether the conclusions of law are reasonable, and not arbitrary, capricious or incorrect as a matter of law. *Roderick v. Pennsylvania Labor Relations Board*, 86 Pa. Commonwealth Ct. 278, 484 A.2d 841 (1984). Because the parties agree to the underlying facts, we need only address the issue

of whether the Board's conclusions of law were reasonable.

This Court in *Shearer v. Commonwealth, Secretary of Education,* 57 Pa. Commonwealth Ct. 266, 424 A.2d 633 (1981), held that school districts are entitled to set off earnings from unemployment compensation benefits against reimbursement of lost salary after wrongful dismissal. The issue in the present case is whether an educational institution is entitled to recoup or set-off against a back wages payment awarded to an employee not only those amounts of unemployment compensation benefits received for those weeks of unemployment occurring during the academic year, which the employee would have worked if he had not been wrongfully laid off, but also those weeks occurring between two successive academic years. One cannot ascertain the answer to this question from a reading of *Shearer* or the opinion in *Pennsylvania Labor Relations Board v. Stairways, Inc.,* 56 Pa. Commonwealth Ct. 462, 425 A.2d 1172 (1981), which cited *Shearer.* Therefore, it appears that this is a case of first impression.

The resolution of the present case turns on the construction of Section 704 of The Unemployment Compensation Law[1], which provides as follows:

> Any employer who makes a deduction from a back wages award to a claimant because of the claimant's receipt of unemployment compensation benefits, for which he has become ineligible by reason of such award, shall be liable to pay into the Unemployment Compensation Fund an amount equal to the amount of such deduction. When the employer has made such a payment

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* added by Section 8 of the Act of July 6, 1977, P.L. 41, 43 P.S. §864.

into the Unemployment Compensation Fund, his reserve account shall be appropriately credited.

By way of Section 704 and Section 804(b)(3) of the same law[2], the legislature has provided two alternative methods for the recoupment of unemployment compensation benefits paid to a claimant who is awarded back wages. Under Section 704, the employer is implicitly given the authority to deduct from the back wages award that amount of unemployment compensation benefits "for which he has become ineligible by reason of the award." The employer then must pay a sum of money equal to the amount of the deduction to the Unemployment Compensation Fund. In the alternative, if the employer does not make such a deduction from the back wages award, it or the employee, under Section 804(b)(3), must notify the Office of Employment Security (Office), of the receipt of the back wages award. The Office will then, through its own efforts, collect from the employee that amount equal to the unemployment compensation benefits received "during the period to which such wages are allocated."

Since both of these sections relate to the recoupment of unemployment compensation benefits when a back wage award has been made, they are in pari materia and should be construed together, if possible, as one statute. 1 Pa. C. S. §1932. We are able to do this by construing the phrase "unemployment compensation benefits, for which he has become ineligible by the reason of the award," which appears in Section 704, to mean unemployment compensation benefits paid during those weeks to which a back wages award to the recipient has been allocated. Therefore, the two sec-

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* amended by Section 21 of the Act of December 5, 1974, P.L. 521; Section 21 of the Act of July 10, 1980, P.L. 521; Section 28 of the Act of July 21, 1983, P.L. 68, 43 P.S. §874(b)(3).

tions taken together require that the Unemployment Compensation Fund be replenished by an amount equal to those unemployment compensation benefits, either by the employer deducting that amount from the back wage award and paying it back into the Fund or by the Office collecting it from the employee itself.

It is the respondent's position that the phrase "unemployment compensation benefits for which he has become ineligible by reason of the award," which appears in Section 704, should be construed to mean those benefits which a person employed in an instructional, research or principal administrative capacity by an education institution is ineligible to receive under Section 402.1 of the Unemployment Compensation Law.[3] Under Section 402.1, a person employed in an instructional, research or principal administrative capacity for an educational institution is ineligible to receive unemployment compensation benefits during the time between two successive academic years if there is a contract or a reasonable assurance that he will be employed in any such capacity in the second of such school years. Therefore, according to the respondent, a person employed in an instructional, research or principal administrative capacity for an educational institution who receives a back wage award should be held to have been ineligible to receive unemployment compensation benefits during those weeks occurring between two successive school years. According to the respondent, there would have been a contract or a reasonable assurance that he would perform services for an educational institution in the second of such school years. We do not believe however that such a construction is correct.

To interpret the provision of the statute at issue as the respondent suggests would create a situation where

---

[3] 43 P.S. §802.1.

the amount of money which the Unemployment Compensation Fund receives depends on whether the employer elects to deduct the amount of unemployment compensation benefits received by the employee during the period of unemployment. If the employer does not so elect and requires the Unemployment Compensation Fund to seek recoupment, the Office of Employment Security would be able to collect from the employee only that amount of money which equals the benefits paid during those weeks "to which the back wage award is allocated." Unless an employee's contract provides that he was to perform services during the summer weeks between two successive school years, so that he would be entitled to an award of back wages for such time if he were to be wrongfully dismissed or laid off prior to that time, the back wage award would not be allocated to the summer weeks. Therefore, the Office would not be able to recoup from the employee unemployment compensation benefits paid during those weeks.

On the other hand, if we interpret Section 704 as the respondent would have us do and the employer elects to deduct those unemployment compensation benefits which the employee received during the period of unemployment following the wrongful dismissal or layoff, including benefits received during summer weeks occurring between two successive school years, the Unemployment Compensation Fund would be replenished with a larger sum of money than it would be by the alternate method. We see no rationale for this difference.

Implicit in the respondent's position, is the contention that Section 704 must be construed in a manner that will make it consistent with Section 402.1. Section 402.1, unlike Sections 704 and 804(b)(3), however, does not deal with the recoupment of unemployment compensation benefits in the event of a back wage award. It

deals with the initial eligibility of employees of educational institutions to collect unemployment compensation benefits during a specific period of time. Therefore we do not believe that Section 704 must be read in pari materia with Section 402.1.

Our construction of Section 704 is consistent with the policy behind Section 704, as determined in our decision in *Bureau of Employment Security v. Pennsylvania Engineering Corporation,* 54 Pa. Commonwealth Ct. 376, 421 A.2d 521 (1980). In that case the Bureau brought an action against an employer to collect an amount equal to the deductions which the employer had made from awards of back wages to employees for unemployment compensation benefits received during the period between a wrongful dismissal and reinstatement. The employer contended that the action constituted an unlawful attempt to redetermine the initial eligibility of the employees for unemployment compensation benefits after the benefits had been paid. In response to that contention, we stated:

> The Bureau's lawsuit is not predicated on an idea that somehow the employees were ineligible . . . *ab initio.* Section 704 simply expresses a sound policy determination: that if the employer must *pay* the employees for their time out of work, then interim amounts received as unemployment benefits should come back into the Unemployment Compensation Fund for the use of others. (Emphasis added.)

*Id.* at 381, 421 A.2d at 524.

Here, it does not appear that Dr. Davis would have been required to perform services for the employer during the summer weeks between the two successive academic years under his contract. As a result the employer could not have been ordered to pay him back wages for those weeks. Therefore, pursuant to the afore-

mentioned policy, for this period money need not come back into the Unemployment Compensation Fund. To hold otherwise would result in a situation where Dr. Davis would in effect be redetermined to have been initially ineligible to receive unemployment compensation benefits during that period of time. That is the exact type of situation that the employers in *Pennsylvania Engineering Corporation* complained about.

Therefore, it appears that the Pennsylvania Labor Relations Board erroneously interpreted the recoupment provisions of the unemployment compensation statute. We hold that the employer, in deducting unemployment compensation benefits for the period of May 29, 1982 to August 21, 1982, failed to comply with the order of the arbitrator requiring that the petitioner be made whole for wages and benefits lost.

## ORDER

Now, October 13, 1987, the order of the Pennsylvania Labor Relations Board, dated March 14, 1985 is reversed. The State System of Higher Education, Commonwealth of Pennsylvania, is ordered to pay to Dr. Richard O. Davis that portion of the $3,366.00 which it deducted from his back wage award which constitutes unemployment compensation benefits received during the period from May 29, 1982 to August 21, 1982.