**ABINGTON HEIGHTS SCHOOL DISTRICT, Appellant,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD and Abington Heights Education Association.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1998.

Decided March 20, 1998.

Before the parties could reach a successor agreement, the Association went on strike January 12, 1993 for approximately nine days. (Finding of Fact No. 5.) The District took the position that the strike "nullified" the parties' August 14, 1992 addendum agreement to continue the terms and conditions of the CBA.

On August 31, 1994, assisted by a mediator, the parties' negotiators reached a proposed settlement for a five-year successor agreement. (Finding of Fact No. 15.) Drafted and handwritten by the mediator, the proposed settlement provided in pertinent part as follows:

> Mediator's proposal for settlement between Abington Heights School District and Abington Heights Education Association.
>
> 1. Duration—5 years Sept. 1, 1992 to Aug. 31, 1997.
>
> 2. Salary increases:
>
> | | | |
> |---|---|---|
> | 1st year - 3% | including | increment |
> | 2nd year - 3% | " | " |
> | 3rd year - 4% | " | " |
> | 4th year - 4% | " | " |
> | 5th year - 4% | " | " |
>
> Retroactivity will commence in second year of the agreement Sept. 1, 1993. No retroactivity for 1992–93.
>
> . . . .
>
> 4. All tentative agreements previously reached.
>
> 5. All provisions of the existing agreement with the exception of the above listed items shall remain in force.

(R.R. 248–249a.)

Charles N. Sweet, Doylestown, for appellant.

A. Martin Herring, Philadelphia, for intervenor, Abington Heights.

Before PELLEGRINI and LEADBETTER, JJ., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Abington Heights School District (the District) appeals from the May 14, 1997 order of the Court of Common Pleas of Lackawanna County (trial court) denying the District's appeal from the Pennsylvania Labor Relations Board's (PLRB's) decision determining that the District was obligated to arbitrate 18 grievances. We affirm.

The facts as found by the PLRB are as follows. The District and the Abington Heights Education Association (Association) were parties to a collective bargaining agreement (CBA) effective from 1988 to 1992. (PLRB's Final Order at 3.) On August 14, 1992, prior to the CBA's expiration, the parties in an addendum agreement agreed to continue the CBA in full force and effect until the parties could ratify a successor agreement. (*Id.*)

The Association's representatives signed the proposed settlement on September 1, 1994, and the District's representatives signed it on September 2, 1994. The parties referred to their respective signings as ratifications. (Finding of Fact No. 16.) Based on, inter alia, the parties' implementation of this proposed settlement agreement, the PLRB concluded that "the parties did indeed

reach a successor bargaining agreement, as outlined in the mediator's settlement document." (PLRB's Final Order at 9.)

The Association subsequently drafted salary schedules for the years 1992 to 1997, which its members approved by vote. (Finding of Fact No. 17.) The District then drafted a comprehensive typewritten document setting forth its interpretation of the terms and conditions outlined in the proposed settlement and attached the Association's salary schedules to that typewritten document. (Finding of Fact No. 18.) The Association did not sign the typewritten document because it disagreed with the District's interpretation of the terms of the August 31, 1994 settlement document. (Finding of Fact No. 20.)

The PLRB in its final order stated that the parties agree that the District is paying the employees according to the salary schedules and that they are operating under the terms outlined in the proposed settlement document. (PLRB's Final Order at 9.) They disagree, however, over the meaning of various terms, including "horizontal retroactivity," which refers to the provisions which permit the bargaining unit member professionals to receive a higher amount of compensation when they complete additional course credit requirements. (PLRB's Final Order at 3.)

For the years 1992 to 1993, 1993 to 1994 and 1994 to 1995, the Association filed a total of 18 grievances. (Id. at 4.) They relate to various topics, including the application of the horizontal retroactivity provision. As the parties did not resolve the grievances at any of the initial steps of their grievance procedure, the Association requested that the District proceed to arbitration. The District refused to do so.

The Association subsequently filed charges with the PLRB alleging that the District had committed unfair labor practices by refusing to arbitrate a series of grievances. On November 12, 1996, the PLRB in a final decision and order determined that the District was obligated to arbitrate the grievances. Inter alia, the PLRB cited *Chester Upland School District v. McLaughlin*, 655 A.2d 621 (Pa.Cmwlth.1995), *aff'd per curiam*, 544 Pa. 199, 675 A.2d 1211 (1996), holding that all questions of whether a matter is arbitrable must be decided in the first instance by an arbitrator. It also cited *Pennsylvania Labor Relations Board v. Williamsport Area School District*, 486 Pa. 375, 406 A.2d 329 (1979), holding that where a CBA had expired, there was still an obligation to arbitrate because the refusal to arbitrate was a unilateral change in the employees' terms and conditions of employment while the employees were working and coercive of their right to negotiate those terms and conditions with the employer.

The trial court denied the District's appeal of the PLRB's order, rejecting the District's argument that it was not required to arbitrate because there was no valid CBA. The court stated that the issue is whether the successor agreement (proposed settlement agreement) is arbitrable *despite* an alleged inability of the parties to contract. It further concluded that it has no jurisdiction until after an arbitrator hears the case and a party appeals from his decision. An appeal to this Court ensued.

The narrow issue presented by the District is whether the PLRB erred in concluding that the District was obligated to arbitrate the grievances regarding horizontal retroactivity because the mediator's handwritten proposed settlement agreement was a binding CBA between the parties. Our scope of review is limited to determining whether or not substantial evidence supports the findings and whether the conclusions based on those findings are reasonable and not arbitrary, capricious or incorrect as a matter of law. *Joint Bargaining Committee of the Pennsylvania Social Services Union v. Pennsylvania Labor Relations Board*, 68 Pa. Cmwlth. 307, 449 A.2d 96 (1982), *aff'd*, 503 Pa. 236, 469 A.2d 150 (1983). The PLRB is the fact finder and we must accept its findings as conclusive if they are supported by substantial evidence. *Pennsylvania Labor Relations Board v. Stairways, Inc.*, 56 Pa. Cmwlth. 462, 425 A.2d 1172 (1981).

Section 903 of the Public Employe Rela-

tions Act (PERA),[1] entitled "Disputes under collective bargaining agreement: mandatory arbitration," provides as follows:

> Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory....

The District argues that the PLRB erred in determining that the mediator's handwritten settlement proposal was a binding CBA that was subject to the arbitration provisions of Section 903 of PERA. It contends that there was no meeting of the minds and, thus, no binding CBA subject to PERA's arbitration provision. It argues that PERA requires the existence of a CBA in order to invoke the arbitration provisions.

The PLRB notes that an employer is obligated to proceed to arbitration of any and all grievances that arise out of a CBA and that any question of whether grievances, in fact, arose out of a CBA is for the arbitrator. Thus, it contends that, even if the parties disagree as to whether grievances arose out of a CBA, it is up to the arbitrator to decide the question of arbitrability in the first instance. *Pennsylvania Labor Relations Board v. Bald Eagle Area School District,* 499 Pa. 62, 451 A.2d 671 (1982); *Chester Upland.*

Citing *Chester Upland,* the Association as Intervenor argues that "[d]ecisions regarding the arbitrability of disputes encompass not only a determination of whether the dispute comes within the terms of the Agreement, but whether the agreement itself exists." (Intervenor's Brief at 9.) It analogizes the situation in *Chester Upland,* where the Chester Upland School District argued that it need not arbitrate because the grievance provision of the CBA did not apply to a teacher with a remedy under Section 1151 of the Public School Code of 1949,[2] to the case at bar where the District argues that it need not arbitrate because the handwritten agreement does not constitute a binding CBA.

The Intervenor maintains that, just as Chester Upland was required to submit to arbitration where it argued that there was no CBA relative to the dispute, so too should the District in the case before us.

In *Chester Upland,* we considered the issue of whether the arbitrator or the trial court has jurisdiction, in the first instance, to determine if a matter is arbitrable. We made the following pronouncement:

> We hold that Section 903 of PERA is not silent as to whether the arbitrator has jurisdiction because our Supreme Court in *Bald Eagle* has interpreted that section to mean that the arbitrator has sole and exclusive jurisdiction to hear disputes *related* to collective bargaining agreements, including disputes of whether a matter is arbitrable.

*Id.* at 629 (emphasis added).

Pursuant to our holding that the arbitrator is to hear, at least in the first instance, all disputes, including the arbitrability of disputes, we also overruled numerous cases in *Chester Upland.* Some of these included *Central Bucks School District v. Central Bucks Education Association,* 157 Pa. Cmwlth. 100, 629 A.2d 196 (1993), *Middle Bucks Area Vocational Technical School Education Association v. Executive Council, Middle Bucks Area Vocational Technical School,* 122 Pa.Cmwlth. 595, 552 A.2d 763 (1989) and *In re Glover,* 137 Pa.Cmwlth. 429, 587 A.2d 25, *petition for allowance of appeal denied,* 528 Pa. 633, 598 A.2d 286 (1991). *Chester Upland* at n. 9. In those cases, we stated that it was up to the courts, as a threshold question, to decide whether an agreement to arbitrate existed prior to granting the arbitrator the power to resolve the scope of the grievance arbitration procedure.

Given the fact that we overruled the above-cited cases in *Chester Upland,*[3] we conclude that the PLRB in the case at bar did not err

---

1. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.903.

2. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1151.

3. In *Amalgamated Transit Union, ATU Local 168 v. Lackawanna Transit System,* 678 A.2d 1225, 1229 (Pa.Cmwlth.1996), we noted that our Court in *Chester Upland* overruled cases standing for the proposition that courts may determine whether there exists an agreement to arbitrate a dispute.

in determining that the District was obligated to arbitrate the grievances. The arbitrator has sole and exclusive jurisdiction to hear disputes related to collective bargaining agreements, including the dispute as to whether the grievances regarding horizontal retroactivity are arbitrable. *See Chester Upland.*

For the above reasons, we affirm.

### ORDER

AND NOW, this 20th day of March, 1998, it is hereby ordered that the Court of Common Pleas of Lackawanna County's order dated May 14, 1997, is AFFIRMED.

LEADBETTER, J., concurs in the result only.