## LEHIGHTON AREA SCHOOL DISTRICT, Appellant,

v.

## PENNSYLVANIA LABOR RELATIONS BOARD and Lehighton Area Educational Support Personnel Association, ESPA/PSEA/NEA.

Commonwealth Court of Pennsylvania.

Argued April 19, 1996.
Decided Sept. 12, 1996.

Glenn D. Wattenmaker, for Appellant.

Elizabeth Kelly, for Appellee, Pennsylvania Labor Relations Board.

Quintes D. Taglioli, for Appellee, Lehighton Area Educational Support Personnel Association, ESPA/PSEA/NEA.

Before SMITH and FRIEDMAN, JJ., and LORD, Senior Judge.

SMITH, Judge.

Lehighton Area School District (District) appeals from an order of the Court of Common Pleas of Carbon County that affirmed a final order of the Pennsylvania Labor Relations Board (PLRB) determining that the District committed an unfair labor practice when it discharged Larry Smith in retaliation for his union activities. The issues presented are whether the PLRB's determinations that Smith's discharge was motivated by anti-union animus and that Smith would not have been discharged had he not engaged in union activities are supported by substantial evidence and are in accordance with applicable law.

I.

The PLRB's hearing examiner made the following findings of fact. Smith was first employed by the District on January 18, 1988 as a custodian at the First Ward Elementary School. In June 1993, the First Ward building was closed and Smith was transferred to the position of custodian at the Middle School. In the summer of 1993, after Smith's transfer, he was orally instructed by Joseph Hauser, his supervisor, to conduct weekend checks of the vacant First Ward building, checking for damage and insuring that the building was secure. Hauser directed Smith to keep checking the First Ward

building until he was told to stop or until Hauser picked up the keys. The District pays one hour of overtime for each day of the weekend when the building checks are made. Smith completed his overtime forms, and he was paid overtime for the building checks.

In January 1994, Kevin Chain purchased the First Ward building, and he obtained the keys to the building from Smith. The locks in the building were then changed. Although Smith, by reading the newspaper, became aware in February 1994 that Chain had purchased the First Ward building, neither Hauser nor any other District representative informed Smith of the conditions of the sale or told Smith to discontinue his building checks.[1] As a result, Smith continued to check the exterior of the building and to clean the parking lot but no longer made interior checks.

For six years, Smith held the position of grievance officer and shop steward for the Lehighton Area Educational Support Personnel Association (Association). In January 1994, Hauser advised Smith that any grievances he filed should now be placed in writing; that Hauser no longer wanted to work out grievances orally; and that he was upset with the manner in which Smith handled grievances. On March 22, 1994, Smith filed a written grievance naming himself as one of the grievants. After Smith filed the grievance, Hauser approached William Musselman, president of the Association, and advised him that Smith had been making a lot of people angry. In Musselman's presence, Hauser advised Smith to "back off" in filing so many grievances and that he was making people upset. John Marcinko, the District's business administrator, board secretary and treasurer, met with Smith and advised him that his union activities were upsetting people and that the District paid him, not the union.

On April 15, 1994, Smith was called to a meeting where representatives of the District indicated that there were discrepancies in Smith's time sheets and that these discrepan-

cies would be investigated. On April 18, 1994, Smith received a letter from the District's Superintendent, Shirley Ball, stating that her investigation revealed that Smith had claimed overtime for checking the First Ward building after it was sold and that he continued to check the building after he had turned in his keys to Chain. The letter requested that Smith turn in all of his District keys and notified him that he was suspended immediately without pay pursuant to a probable recommendation for dismissal. Immediately after the dismissal hearing held on June 8, 1994, the School Board voted to discharge Smith for the reason that he falsified time sheets by charging for building checks of the First Ward building after the building was no longer owned by the District.

In the interim, on May 3, 1994, the Association filed a charge of unfair labor practices with the PLRB, which alleged that the School District violated Section 1201(a)(1), (3) and (4) of the Public Employe Relations Act (PERA),[2] which provides:

(a) Public employers, their agents or representatives are prohibited from:

(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

. . . .

(3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization.

(4) Discharging or otherwise discriminating against an employe because he has signed or filed an affidavit, petition or complaint or given any information or testimony under this act.

On January 9, 1995, after a hearing conducted on the complaint filed by the PLRB, a hearing examiner issued his proposed decision and order concluding that the District had discharged Smith for engaging in PERA-protected union activities, thereby committing unfair labor practices within the

---

1. Hauser directed Steve Hollen, another custodian, to stop performing building checks of the empty Third Ward building after Chain purchased that building.

2. Act of July 23, 1970, *as amended*, P.L. 563, 43 P.S. § 1101.1201(a)(1), (3) and (4).

meaning of Section 1201(a)(1) and (3) of the PERA. In addition to directing the District to cease and desist from its unfair labor practices, the hearing examiner recommended that Smith be reinstated to his former position with back pay. The District filed exceptions; the PLRB dismissed the exceptions and then made final the hearing examiner's proposed decision. The trial court affirmed the PLRB after determining that the findings of fact were supported by substantial evidence and that the PLRB did not err in concluding that Smith was discharged because of anti-union animus.

## II.

This Court's scope of review of a PLRB order is limited to determining whether all necessary findings of fact are supported by substantial evidence, whether an error of law has been committed or whether constitutional rights have been violated. *Southeastern Pennsylvania Transportation Authority v. Pennsylvania Labor Relations Board,* 654 A.2d 159 (Pa.Cmwlth.), *appeal denied,* 543 Pa. 700, 670 A.2d 145 (1995). Further, this Court recognizes that the "PLRB possesses administrative expertise in the area of public employee labor relations and should be shown deference; the Commonwealth Court will not lightly substitute its judgment for that of the PLRB." *American Federation of State, County, and Municipal Employees, Council 13, AFL–CIO v. Pennsylvania Labor Relations Board,* 150 Pa.Cmwlth. 642, 616 A.2d 135, 137 (1992).

Before this Court the District contends that the PLRB's determination that Smith's discharge was motivated by anti-union animus is not supported by substantial evidence and is contrary to law. The party claiming that an unfair labor practice has been committed has the burden of proving that charge. *Perry County v. Pennsylvania*

*Labor Relations Board,* 160 Pa.Cmwlth. 287, 634 A.2d 808 (1993). Furthermore, proof of an unfair labor practice charge under Section 1201(a)(3) requires a prima facie showing that the employer's actions were motivated by an unlawful motive or that the employer displayed anti-union animus. *Id.* It is within the province of the PLRB to weigh conflicting evidence, make appropriate credibility determinations, resolve primary issues of fact and draw reasonable inferences from the established facts and circumstances. *Id.*

The District claims that the factual situation in the present case is distinguishable from that in *Perry County,* as well as those in *Rozek v. Bristol Borough,* 149 Pa.Cmwlth. 431, 613 A.2d 165 (1992), and *City of Reading v. Pennsylvania Labor Relations Board,* 130 Pa.Cmwlth. 397, 568 A.2d 715 (1989), where the Court found disparate treatment based on anti-union animus. The District argues that it has never treated a union member differently from a non-union member and that no evidence was presented to satisfy Smith's burden of proof.

An examination of the record demonstrates that substantial evidence exists from which the PLRB could conclude that the District engaged in discriminatory conduct when it discharged Smith. There is no dispute that Smith, a shop steward and grievance officer for the Association, was engaged in union activities protected under PERA. The District was aware of Smith's activities when the statements were made by Hauser in January 1994 and by Hauser and Marcinko in March 1994[3] and when the investigative and disciplinary actions were initiated against Smith in April 1994 leading to his ultimate discharge in June 1994. As the PLRB noted, although Smith had been submitting overtime for the First Ward building since January 1994, no action was taken until after Smith filed the March 22, 1994 griev-

---

**3.** Although Hauser testified that the people who were becoming angry were other union members, the PLRB accepted Smith and Musselman's testimony that Hauser's remarks meant that members of the District's administration were becoming upset. It is the PLRB's function to resolve conflicts in this and the other evidence. *Perry County.*

Although the primary focus of the District's argument is that there was evidence of record to the contrary, the hearing examiner was free to disregard the District's evidence and accept the Association's evidence. The fact that the District offered conflicting evidence does not warrant the setting aside of the PLRB's findings of fact. *Pennsylvania Labor Relations Board v. Ficon, Inc.,* 434 Pa. 383, 254 A.2d 3 (1969).

ance. As was the case in *Perry County* and *Rozek*, the timing of the actions taken by the District provides a strong indicator that they were motivated by anti-union animus.

 The District further contends that the PLRB's determination that Smith would not have been discharged had he not engaged in union activities is not supported by substantial evidence and is contrary to law. In *Perry County* this Court noted that once a prima facie case of anti-union animus is established by the employee, the burden then shifts to the employer to establish by a preponderance of the evidence that the employee would have been discharged even in the absence of his union activities.

The reason the District gave for Smith's discharge was that he continued to collect overtime for building checks on the First Ward building after it was sold. Smith admitted that as of February 1994, he was aware that the building had been sold and that the locks had been changed. Nevertheless, Smith continued to perform building checks. Before the filing of Smith's March 22, 1994 grievance, neither Hauser nor Marcinko questioned his continued building checks or instructed him to stop. After Hauser met with Marcinko and warned Smith about his union activities, the investigation of Smith's time sheets began. These facts support the inference drawn by the PLRB that Smith's union activities caused the District to "seize upon" and/or to "overreact" to Smith's continued building checks of the First Ward building.

The PLRB also found that in 1989, the District adopted a policy of discipline that provided progressive penalties including where appropriate, an oral warning, a written warning, suspension or dismissal. The PLRB noted that although Smith had never been disciplined, no consideration of a lesser penalty was given. The PLRB further noted that although the District characterized Smith's continued checks of the First Ward building as stealing taxpayers' money, Smith was not aware of the conditions of the sale, and he was never instructed by Hauser to stop checking the building. The PLRB's hearing examiner, in his recommended decision, noted that it was conceivable that the District might have made arrangements with the new owner to continue to provide some measure of security during the transition in ownership.

 An employer's failure to follow its own policy of progressive discipline is sufficient to support the PLRB's inference that the employee was discharged because of his or her PERA-protected activities. *See St. Joseph's Hospital v. Pennsylvania Labor Relations Board,* 473 Pa. 101, 373 A.2d 1069 (1977) (hospital's failure to follow its progressive discipline policy in discharging two nurses engaged in union organizing activities supported an inference that they were discharged because of their union activities). Hence, from this Court's examination of the record and labor law applicable to the case sub judice, it is apparent that the order of the trial court must be affirmed.

## *ORDER*

AND NOW, this 12th day of September, 1996, the order of the Court of Common Pleas of Carbon County is hereby affirmed.