# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lancaster County, | : | |
| Petitioner | : | |
| | : | No. 1110 C.D. 2012 |
| v. | : | |
| | : | Submitted: June 6, 2016 |
| Pennsylvania Labor Relations | : | |
| Board, | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                    FILED:  July 6, 2016


Lancaster County (County) petitions for review of the May 15, 2012 final order of the Pennsylvania Labor Relations Board (PLRB) that dismissed County's exceptions to the hearing examiner's decision and order, concluding that County violated sections 1201(a)(1) and (3) of the Public Employe Relations Act (PERA)[1] in terminating the employment of Tommy Epps and Adam Medina in

---

[1] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.1201(a)(1), (3).  Sections 1201(a)(1) and (3) of the PERA provide:

> (a) Public employers, their agents or representatives are prohibited from:

> (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

**(Footnote continued on next page…)**

retaliation for their union activities.  Receiving this matter on remand from the Supreme Court, we address County's remaining arguments and affirm.

## Background

For purposes of this remand, the following factual recitation will suffice.

County operates a Youth Intervention Center (Center) with a detention side for juveniles who have been adjudicated delinquent by the court and a shelter side for other juveniles.  In the spring of 2010, the American Federation of State, County and Municipal Employees, District Council 89 (Union) conducted an organizing drive to accrete into its existing prison guard unit the detention and security officers employed at the Center.  (Findings of Fact at Nos. 3, 5.)

Medina worked in the detention side of the Center, on the third shift, from 11:00 p.m. to 7:00 a.m.  Medina was involved in Union's organizing effort, attending Union's meetings, recruiting other employees to attend meetings, and reporting back to third-shift staff members.  Medina told his supervisor, Fred Arnold, about his support for Union, sharing with him what he thought about Union and what he was doing with respect to Union's efforts.  (Findings of Fact at Nos. 27, 39.)

---

**(continued…)**

\* \* \*

(3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization.

43 P.S. §1101.1201(a)(1), (3).

2

Epps worked in the detention side of the Center, on the second shift, from 7:00 a.m. to 3:00 p.m. Epps was also involved in Union's organizing effort talking to staff about how Union could benefit them. Epps told his supervisor, William Delgado, that Union was coming and that he had spoken with Union's representatives. On June 10, 2010, Union filed a petition for representation with the PLRB. (Findings of Fact at Nos. 6, 28, 40.)

Evette Sepulveda works in the shelter side of the Center on the third shift. On June 20, 2010, Sepulveda complained to her supervisor, Christine Delgado (William Delgado's wife), that someone was taking snacks from her workplace mailbox. Each employee has an open mailbox with his or her name under it. Sepulveda said that items had been taken over the previous month, but the most recent time was Thursday or Friday. (Findings of Fact at Nos. 7-9, 12.)

Christine Delgado reviewed surveillance video of the mailbox area with Arnold, the third shift detention supervisor. The video from Wednesday, June 16, and Thursday, June 17, show three employees taking something out of Sepulveda's mailbox. Two of the employees were Medina and Epps. The third was Latoya Boddy, a part-time employee. The video shows Medina taking a snack-size bag of chips, approximately six inches in size. The video also shows Epps taking a similar sized bag of cookies. (Findings of Fact at Nos. 13, 24.)

Christine Delgado reported her video observations to the Center's director, Drew Fredericks. On Monday, June 21, 2010, Fredericks called Sepulveda and asked her if she had given anyone permission to take snacks from her mailbox. Sepulveda stated that she gave permission to Lavon Jackson and Damaris Veley. Fredericks instructed Sepulveda to write an unusual incident report. (Finding of Fact at No. 15.)

3

Fredericks met with Medina and Epps. Medina and Epps both prepared unusual incident reports. In his report, Medina admitted that he took a snack bag of chips from Sepulveda's mailbox. He explained that Sepulveda had previously given him permission to take food items from her mailbox. Epps wrote a report stating that he took a snack bag of cookies from a co-worker, Leroy Kirkland, whom Epps believed had given him permission to do so. (Findings of Fact at Nos. 18-19.)

Thereafter, Sepulveda filed a second unusual incident report, which stated:

> On Monday, June 21, 2010, at about maybe 2:00 pm, I received a call from my co-worker, Adam Medina. [H]e asked me if I had said anything to my supervisor about missing food from my mailbox. I said, "Yes, why." Adam went on to tell me that he took chips from my mailbox and that he was sorry but he thought he could because of a conversation he said we had about 1 year ago. I told Adam I didn't remember but that he should have told me because I really wouldn't care if he wanted chips because I knew him and it wouldn't be a big deal. I told Adam this has been going on for a while, the missing food from my mailbox.

(Finding of Fact at No. 20.)

On June 23, 2010, Fredericks issued notices to Medina and Epps informing them that he was recommending that they be terminated immediately for taking items from Sepulveda's mailbox. (Finding of Fact at No. 22.) Each notice stated: "[T]he shear [sic] theft of another employee's personal property demonstrated this individual's total failure to achieve the basic expectations of a Youth Intervention Center and County employee." (Finding of Fact at No. 23.) Although Center has a progressive discipline policy,[2] Fredericks thought the taking of snacks was serious

---

[2] The first step in the progressive disciplinary policy is corrective counseling. The second step is a verbal warning. The third step is a written warning. The fourth step is a one-day **(Footnote continued on next page…)**

enough to justify immediate termination rather than progressive discipline because Center workers needed to be a "positive role models" for the juvenile residents. (Finding of Fact at No. 34.)

Fredericks testified that there had been prior alleged complaints of theft at the facility, including the theft of a cell phone. He testified, however, that he did not look at video or investigate other thefts because no written incident report was filed. (Finding of Fact at No. 26.)

At the time of Medina's termination, Medina had been employed on the detention side for three and one-half years. Medina's disciplinary record included two written reprimands. His supervisor was Arnold, who had reviewed the video with Delgado. At the time of his termination, Epps had been employed on the detention side for ten and one-half years. Epps's disciplinary record included over twenty incidents and one suspension. His supervisor was William Delgado. Fredericks reviewed, but did not consider, Medina's disciplinary record prior to discharging him. Fredericks did not review Epps's disciplinary record before discharging him. (Findings of Fact at Nos. 27, 35-37, 40-41.)

Both Epps and Medina appealed their discharges through County's grievance and appeals procedures. At each step, their appeals were denied.[3] (Finding of Fact at No. 44.)

---

**(continued…)**

suspension. The fifth step is a three-day suspension. The sixth step is a five-day suspension. The seventh step is termination. The progressive discipline policy also states that "[t]here are, however, violations of the rules or laws so severe as to render warning or progressive discipline futile. Immediate suspension or discharge is appropriate in these cases." (Findings of Fact at Nos. 30-31.)

[3] Boddy did not appeal her employment termination because she was a part-time employee and the grievance and appeal procedure does not cover part-time employees.

On October 7, 2010, Union filed a charge of unfair labor practices with the PLRB against County, alleging violations of sections 1201(a)(1) and (3) of PERA. To establish an unfair labor practice under section 1201(a)(3) of PERA, it must be proved, by a preponderance of the evidence, that: (1) the employee was engaged in protected activity; (2) the employer knew of the activity; and (3) the employer was motivated by anti-union animus in taking adverse action. *Case v. Hazleton Area School District*, 915 A.2d 1262, 1267 (Pa. Cmwlth. 2007). Further, a violation of section 1201(a)(3) of PERA constitutes a derivative violation of section 1201(a)(1); consequently, proof that an employer violated section 1201(a)(3) of PERA necessarily establishes a violation of section 1201(a)(1) also. PLRB's Final Order at 6 n.6; *see Metropolitan Edison Company v. National Labor Relations Board*, 460 U.S. 693, 698 n.4 (1983).

Ultimately, the hearing examiner determined that County violated sections 1201(a)(1) and 1201(a)(3) when it terminated Epps and Medina, finding that Epps and Medina were engaged in union activity; County knew of their affiliation with Union; and County discharged them as the result of anti-union animus. (*See generally* Hearing Examiner's Proposed Decision and Order.) The PLRB upheld this determination. (*See generally* PLRB's Final Order.)

On appeal to this Court in *Lancaster County v. Pennsylvania Labor Relations Board*, 82 A.3d 1098 (Pa. Cmwlth. 2013) (en banc), we reversed the PLRB, concluding that Union's evidence was legally insufficient to support a finding that the supervisor who fired Epps and Medina, Fredericks, possessed knowledge of Epps and Medina's union activities. This Court further concluded, in the alternative, that Union failed to submit sufficient evidence to support an inference of anti-union animus. *See id.* at 1109-18.

6

On discretionary allowance of appeal, the Supreme Court disagreed with this Court's decision and reversed. *Lancaster County v. Pennsylvania Labor Relations Board*, 124 A.3d 1269 (Pa. 2015). Particularly, the Supreme Court concluded that the fact that two supervising employees, Arnold and Christine Delgado, had knowledge of Epps and Medina's union activities satisfied the knowledge requirement for unfair labor practices under PERA. The Supreme Court further concluded that the totality of the circumstances established that County violated sections 1201(a)(3) of PERA by discharging Medina and Epps on the basis of anti-union animus. *See Lancaster County*, 124 A.3d at 1286-93. In this regard, the Supreme Court concluded:

> Applying the appropriate standard of review, and labor law applicable to the case *sub judice*, we conclude the [PLRB] appropriately examined the totality of the circumstances surrounding the discharges and properly determined the Union met its burden of proving the County had an improper motive, thus terminating Mr. Medina and Mr. Epps due to their protected activities. Accordingly, and having found the [PLRB] did not err with regard to its analysis of the other two elements, we conclude the [PLRB] properly found the County violated Section 1201(a)(3) when it terminated the employment of Mr. Medina and Mr. Epps. The Commonwealth Court's holding to the contrary cannot be sustained.

*Id.* at 1292-93. The Supreme Court also concluded that a violation of section 1201(a)(3) of PERA is a derivative violation of section 1201(a)(1) and, therefore, reversed this Court's holding that there was no section 1201(a)(1) violation. *Id.* at 1293.

In its final mandate, the Supreme Court remanded the matter to this Court "for consideration of those issues raised by the parties on appeal but not previously addressed by the court." *Lancaster County*, 124 A.3d at 1293.

7

Following the Supreme Court's remand, Union and the PLRB filed an application to dismiss in this Court on April 8, 2016, contending that there are no outstanding issues to be resolved. By memorandum and order dated April 28, 2016, a senior judge from this Court denied the application and directed County to file a statement of issues that remain to be disposed by the Court on or before May 25, 2016. County filed its response on May 24, 2016.

## Discussion

### Issues to be Considered on Remand

This Court has reviewed County's appellate brief and its May 24, 2016 response. Although County lists nine issues in its statement of the questions involved portion of its appellate brief, the argument section lists and addresses only three distinct issues: (1) whether the PLRB erred in relying on findings of fact that were contrary to the record; (2) whether the PLRB's conclusion that Union sustained its burden to establish a *prima facie* case of anti-union animus lacks evidentiary support and is arbitrary, capricious, and incorrect as a matter of law; and (3) whether the PLRB's conclusion that Epps and Medina would not have been discharged in the absence of protected activity is arbitrary, capricious, and incorrect as a matter of law. (PLRB's brief at ii, 19-43.) When issues are stated in the statement of questions involved, but not discussed in the argument section of a brief, they are waived. *Van Duser v. Unemployment Compensation Board of Review*, 642 A.2d 544, 548 n.3 (Pa. Cmwlth. 1994) ("Claimant's brief lists in the 'Statement of Questions Involved' the following question . . . . Nowhere in the brief is this issue discussed. Issues not briefed are waived."). Therefore, as a prefatory matter, this Court will only consider those issues that are briefed in the argument section of County's brief.

8

In its May 24, 2016 response, County contends that there remains three issues to be resolved after the Supreme Court's decision in *Lancaster County*: (1) whether the PLRB erred in concluding that knowledge of protected activity by first-level supervisors may be imputed to County; (2) whether the PLRB erred in substituting its judgment for that of County regarding employee discipline; and (3) whether the PLRB erred in substituting its judgment for that of County regarding employee discipline and undermining the goal of the Juvenile Act[4] to provide for the care, protection, and safety of children.

However, and of most paramount significance, the Supreme Court in *Lancaster County* determined that the PLRB's credibility determinations and factual findings support its conclusions that County, acting through its supervisors, had knowledge of Medina and Epps's protected union activity; that Medina and Epps were discharged as the result of anti-union animus; and that County committed and was liable for unfair labor practices. In other words, the Supreme Court upheld the PLRB's determination that Union's evidence satisfied all of the basic elements of unfair labor charges under sections 1201(a)(3) and 1201(a)(1) of PERA. Consequently, the Supreme Court effectively decided the second and third issues in the argument section of County's brief, as well as every issue listed in its May 24, 2016 response, all of which, in one form or another, contend that the elements of the section 1201(a)(3) charge have not been met.[5] Obviously, we are bound by our

_____

[4] 42 Pa.C.S. §§6301—6365.

[5] Notably, it is well settled that a decision of the PLRB must be upheld if the PLRB's factual findings are supported by substantial evidence, and if the conclusions of law drawn from those facts are reasonable, not capricious, arbitrary, or illegal. *Joint Bargaining Committee of Pennsylvania Social Services v. Pennsylvania Labor Relations Board*, 469 A.2d 150, 152 (Pa. 1983). Our Supreme Court in *Lancaster County* has already determined that the PLRB's legal conclusions were **(Footnote continued on next page…)**

Supreme Court's decision in *Lancaster County* and cannot permit County to re-litigate issues that are foreclosed by that decision. Accordingly, this Court will only address the first issue listed in the argument section of County's brief, which mounts challenges to several of the PLRB's findings of fact on the ground that they are not supported by substantial evidence.

The PLRB's Challenged Findings of Fact are Supported by Substantial Evidence

Initially, we note that it is within the province of the PLRB, as the factfinder, to weigh conflicting evidence, make appropriate credibility determinations, resolve primary issues of fact, and draw reasonable inferences from the established facts and circumstances. *Lehighton Area School District v. Pennsylvania Labor Relations Board*, 682 A.2d 439, 442 (Pa. Cmwlth. 1996). Findings of fact are conclusive on appeal as long as the record contains substantial evidence to support those findings. *Uniontown Area School District v. Pennsylvania Labor Relations Board*, 747 A.2d 1271, 1274 (Pa. Cmwlth. 2000).

---

**(continued…)**

correct. *See Lancaster County*, 124 A.3d at 1292-93; *id.* at 1288 ("We . . . agree with the [PLRB], that, as applied to unfair labor practices under PERA, a complainant meets the knowledge requirement by proving a supervisor, who by definition acts in the interest of the public employer, had knowledge of the employee's protected activity. Here, no one disputes that Mr. Arnold and Mr. Delgado were supervisory employees with knowledge of Mr. Medina's and Mr. Epps' protected activity, and therefore, for purposes of PERA, we conclude the Union met the knowledge requirement."); *id.* at 1292 ("The [PLRB] concluded the employees' behavior at issue here was of the type that should have been subject to the employer's standard progressive discipline policy, and thus, the County's failure to follow the policy was a further indicator of the County's anti-union animus. We conclude the [PLRB's] factual findings are supported by substantial evidence, its reasoning is sound, and given the [PLRB's] expertise in the field, the Commonwealth Court erred in failing to defer thereto.").

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Delaware County Lodge No. 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board*, 694 A.2d 1142, 1145 n.5 (Pa. Cmwlth. 1997). Stated differently, "[s]ubstantial evidence is more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established." *Shive v. Bellefonte Area Board of School Directors*, 317 A.2d 311, 313 (Pa. Cmwlth. 1974).

In performing a substantial evidence analysis, this Court must view the evidence in the light most favorable to the party who prevailed before the factfinder and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party. *See Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003); *Tapco, Inc. v. Unemployment Compensation Board of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Furthermore, in a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the factfinder. Rather, the pertinent inquiry is whether there is any evidence which supports the factual finding actually made. *See Waldameer Park*, 819 A.2d at 168; *Tapco, Inc.*, 650 A.2d at 1108-09.

First, County argues that substantial evidence does not support Finding of Fact No. 10, which states that "[i]t is [the Center's] policy to prohibit employes from placing personal items such as snacks in the mailboxes. However, [Fredericks] testified that no one has ever been disciplined for violating the policy." *Id.*

County maintains that this finding is inconsistent with a memo sent by Fredericks to all employees on April 18, 2008, stating that "this addition [of

mailboxes] will accommodate individuals that would like to store *some* personal items that they regularly use at work, but choose not to use a locker . . . . Please remember to keep things organized and presentable." (Reproduced Record (R.R.) at 276a) (emphasis in original). County contends that Fredericks testified that the storage of personal items in the mailbox is not a violation; rather, a violation occurs only if the mailbox is not kept neat.

We agree with Union and the PLRB, however, that the following testimony of Fredericks supports the finding:

> Q. It's technically a violation of the employee mailbox policy when you put anything like cell phones or even food in the employee mailbox; isn't that correct?
>
> A. Correct. We want to keep it as neat as possible.
>
> * * *
>
> Q. And no one was disciplined for having personal items in their mailboxes, right?
>
> A. No.

(N.T. at 38-39.) The above testimony supports the contested finding that personal items were not permitted in mailboxes and that no one was disciplined for placing personal items in a mailbox.

Next, County challenges Finding of Fact No. 11, which states that "Fredericks testified that he has heard of allegations of employees having had other personal items, including a cell phone, taken from the employe mailboxes, but because no written complaints were filed he never investigated the allegations." *Id.*

County posits that Fredericks' testimony was mischaracterized. County contends that, rather than testifying that the Center refused to investigate reports of missing items because no written report was made, Fredericks testified that the

12

Center did not previously receive a specific, credible complaint that would allow it to perform a meaningful investigation.

However, Fredericks testified that the purported theft of a cell phone was not investigated because no one wanted to follow through with a written report. (N.T. at 36-37.) He also testified that County did not investigate whether anyone else took snacks from Sepulveda's mailbox during the previous couple of weeks stating, "[i]f we would have had Incident Reports written regarding specific incidents, yes, we would have. Again, that's the only incident we had that we followed up because it was in writing." (N.T. at 44.) Fredericks' testimony supports this challenged finding.

County also takes issue with Finding of Fact No. 15, which provides that "[o]n Monday, June 21, Fredericks called Sepulveda, and asked her if she had given permission to anyone to take snacks from her mailbox. Sepulveda said she had only gave [sic] permission to two other employes, Lavon Jackson and Damaris Veley." *Id.* County argues that this finding mischaracterizes Sepulveda's testimony. We disagree. This finding is supported by Sepulveda's testimony that she could only recall giving permission to Jackson and Veley to take items from her mailbox. (N.T. at 148.)

County next challenges Finding of Fact No. 26, which states that "Fredericks testified that there had been prior incidents of theft from the [Center] but that he had never investigated them or looked at surveillance videotape because no employe had filed a written incident report. One theft involved an employe's cell phone." *Id.*

13

County maintains that Fredericks did not state that there were prior incidents of theft. Rather, he stated that there were alleged complaints of theft but that prior to Sepulveda, he had never received a specific complaint of employee theft.

However, the following testimony supports the finding:

> Q. You've had employees complain about having things taken from their mailbox, haven't you?
>
> A. Allegedly, but no one wanted to write a report or take it any further.
>
> Somebody said somebody [sic] about food items she was missing, and they didn't want to follow through on it with any type of report[.]

(N.T. at 34-35.) Further, on numerous occasions, including during the following exchange, Fredericks testified that investigations of theft are contingent upon the filing of a written complaint:

> Q. Mr. Fredericks, is your testimony that even if there's something that's being stolen at the facility, if nobody writes a report about it, it doesn't get investigated?
>
> A. No. They need to file a complaint or follow through with written communication.

(N.T. at 237.) Therefore, Finding of Fact No. 26 is supported by substantial evidence.

Additionally, County challenges Finding of Fact No. 29, which states that "County had never previously dismissed an employee for taking something out of an employe mailbox." *Id.* County does not argue that this finding is not supported by the record. Instead, County maintains that the finding is misleading because it implies that an employee previously took something out of a mailbox and was not dismissed.

14

The above finding is supported by Fredericks' testimony. When asked whether anyone had been fired for taking items out of someone else's mailbox, Fredericks responded "no." (N.T. at 34.)

County also challenges Finding of Fact No. 37, which provides that "Fredericks reviewed Medina's prior discipline record before issuing the termination notice, but did not consider it. Fredericks did not review Epps'[s] disciplinary history prior to issuing the termination notice." *Id.*

County maintains that Fredericks testified that he reviewed both employees' disciplinary records, but the records had no bearing on his decision to immediately terminate both employees. Regardless, Fredericks testified that he "would have looked at [Epps's discipline record], but I kind of knew [his] discipline history . . . ." (N.T. at 43.)

Fredericks's testimony that he "would have" looked at Epps's discipline record sustains a reasonable inference that he may not have, and thus is adequate to support the finding that he did not review Epps's disciplinary record.

Furthermore, County takes issue with Finding of Fact No. 38, which provides that "[n]either Epps nor Medina had been disciplined for theft before these incidents." *Id.*

County concedes this finding is "technically accurate," (County's brief at 23), but argues that it is misleading because it suggests that Epps and Medina previously committed thefts and were not terminated. We agree with Union and the PLRB that, as acknowledged by County, the finding is supported by substantial evidence, namely the testimony of Epps and Medina regarding their prior disciplinary record which indicates that they were never disciplined for theft. (N.T. at 59-60; 102-03.)

15

Lastly, County challenges Finding of Fact No. 39, which states that "Medina spoke with his supervisor, Fred Arnold, about his support for the Union in May 2010, sharing with him what he thought about the Union and what he was doing with respect to the Union's efforts." *Id.*

County argues that this finding mischaracterizes Medina's testimony. We disagree. When asked whether any supervisors knew of his support of the Union, Medina stated that Arnold knew because he spoke to Arnold about the Union. Specifically, Medina testified: "I asked [Arnold] what he thought about the Union, and what I was doing about the Union, as well." (N.T. at 61.) Therefore, substantial evidence supports the finding.

### Conclusion

In accord with the Supreme Court's decision reversing this Court's decision insofar as we concluded that Union's evidence was insufficient to establish that County committed an unfair labor charge, and having determined that the only cognizable legal argument on remand is County's challenges to the PLRB's findings of fact, which findings are supported by substantial evidence of record, we affirm the PLRB's final order concluding that the County violated sections 1201(a)(1) and (3) of PERA.

_____
PATRICIA A. McCULLOUGH, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lancaster County,                          :
                Petitioner          :
                          :   No.  1110 C.D. 2012
          v.                     :
                          :
Pennsylvania Labor Relations            :
Board,                                   :
                Respondent         :

## *ORDER*

AND NOW, this 6th day of July, 2016, the May 15, 2012 final order of the Pennsylvania Labor Relations Board is hereby affirmed.

                                _____

                                PATRICIA A. McCULLOUGH, Judge