IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Elease M. Elliott, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 588 C.D. 2016 |
| | : | SUBMITTED: December 15, 2016 |
| Pennsylvania Labor Relations | : | |
| Board, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE JULIA K. HEARTHWAY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE HEARTHWAY                    FILED: March 2, 2017

Elease M. Elliott (Elliott) petitions for review of the final order of the Pennsylvania Labor Relations Board (Board), entered March 15, 2016, dismissing her charge of unfair practices against the County of Lancaster (County). We affirm.

Elliott is a correctional officer for the County. She was hired as a full-time probationary employee on May 20, 2013, and she began working the 8:00 a.m. to 4:00 p.m. (8-4) shift at that time. On August 5, 2013, Elliott volunteered to move to the 12:00 a.m. to 8:00 a.m. (12-8) shift in place of another employee with

medical issues.  Subsequently, Elliott requested several times to move back to the 8-4 shift.  (Findings of Fact (F.F.) Nos. 3-6.)[1]

On May 21, 2014, Elliott's original 8-4 shift was posted and open for bid.[2]  (Supplemental Reproduced Record (S.R.R.) at 14b, Exhibit (Ex.) E-1.)  On May 29, 2014, Elliott put in a formal bid to return to the 8-4 shift.  (F.F. No. 6.)  On June 9, 2014, Elliott was awarded the 8-4 shift, and she worked that shift for several weeks.  (*See* F.F.  No. 7; S.R.R. at 15b, Ex. E-2.)

On June 11, 2014, the local president of the American Federation of State, County and Municipal Employees (AFSCME or Union)[3] informed the County that a lieutenant on the 4:00 p.m. to 12:00 a.m. (4-12) shift erroneously advised his subordinates that the May 21, 2014, posting for the position on the 8-4 shift was not open to female correctional officers.  (Amended F.F. No. 8.)  Due to the erroneous announcement, the County reposted the position on the 8-4 shift on June 24, 2014.  (Amended F.F. No. 8.)  On June 29, 2014, Elliott submitted another bid for the 8-4 shift, but she did not get the position because it was awarded to a more senior employee.  (Amended F.F. No. 9.)  Elliott testified that on July 14, 2014, Major Klinovski informed Elliott that she would be moving to

_____

[1] The Board adopted the hearing officer's proposed decision and order (PDO) but amended some of the findings of facts.  Citations to Findings of Fact appear in the PDO whereas citations to Amended Findings of Fact appear in the Board's order.

[2] Elliott's one-year probationary period had expired at this time.  Upon expiration of an employee's probationary period, the employee's shift is open for bid.  (Reproduced Record (R.R.) at 69a.)

[3] AFSCME is the exclusive bargaining representative for the correctional officers employed by the County.  (Amended F.F. No. 8.)

2

the 4-12 shift, and Elliott responded that she intended to file a grievance.[4] (Reproduced Record (R.R.) at 51a-52a, *see* Amended F.F. No. 9.)  On July 23, 2014, Elliott filed a grievance protesting the award of the shift to a more senior officer, arguing that Elliott was the sole applicant and was entitled to the position. (F.F. No. 10.)  The grievance proceeded to step 3 but ultimately was withdrawn by the Union on September 8, 2014.[5]  (F.F. No. 10, S.R.R. at 10b.)

On November 6, 2014, Elliott filed a charge of unfair practices with the Board, which she subsequently amended (Charge).  (R.R. at 3a-6a.)  In her Charge, Elliott alleged that the County violated sections 1201(a)(1), (3) and (4) of the Public Employe Relations Act (PERA).[6]  Specifically, she charged:

---

[4] The parties agree Major Klinovski makes determinations regarding posting and filling positions.  (Reproduced Record (R.R.) at 64a-65a.)

Elliott did not number the pages in the reproduced record using a lower case "a" after the numerals, as required by Pa. R.A.P. 2173.  We will cite to the page numbers of the reproduced record in the proper format.

[5] At step 3, the union representative and grievant present the grievance to the County's Director of Personnel (Director), and the Director renders a written decision.  (R.R. at 17a, *see* R.R. at 125a-26a.)

[6] Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.1201(a)(1), (3) and (4).  Section 1201 of PERA provides in relevant part:

>  (a)     Public employers, their agents or representatives are prohibited from:
>
>  (1)     Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.
>
>  …
>
>  (3)     Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization.
>
>  (4)     Discharging or otherwise discriminating against an employe because he has signed or filed an affidavit, petition or complaint or given any information or testimony under this act.

43 P.S. § 1101.1201(a)(1), (3) and (4).

> Violation of CBA [collective bargaining agreement] Article XVI Section 5: Complainant [Elliott] was the only applicant for 8-4 shift position but Respondent [County] refused to move Complainant [Elliott] to that shift in [sic] permanently on 14 July 2014 (despite the position opening having been read at roll-call and posted) but instead re-posted the position. Complainant [Elliott] had temporarily been moved to the 8-4 shift (from 11 June -28 July 2014) but then was put back on 12-8[7] as a result of this incident. Complainant [Elliott] believes the violation may also be retaliation by Respondent [County] against her asking for assistance in restraining a patient/inmate while on hospital detail on 25 June 2014.

(R.R. at 6a.)

A hearing was held before the Board's hearing officer, who issued a proposed decision and order (PDO), concluding that the County had not committed unfair practices. (R.R. at 137a-41a.) Elliott filed exceptions with Board. (S.R.R. at 37b-42b.) The Board dismissed the exceptions, adopted the PDO, as amended, and made it final (Final Order). (R.R. at 146a.)

Elliott now petitions this Court for review of the Board's Final Order,[8] arguing that the Board erred in concluding that the County did not violate PERA.[9]

---

[7] We note Elliott testified she was moved to the 4-12 shift. (R.R. at 51a-52a, *see* Amended F.F. No. 9.) This discrepancy is immaterial.

[8] This Court's scope of review is limited to determining whether all necessary findings of fact are supported by substantial evidence, whether an error of law has been committed or whether constitutional rights have been violated. *Lehighton Area School District v. Pennsylvania Labor Relations Board*, 682 A.2d 439 (Pa. Cmwlth. 1996). The Board "possesses administrative expertise in the area of public employee labor relations and should be shown deference; the Commonwealth Court will not lightly substitute its judgment" for that of the Board. *Id*. at 442.

[9] Elliott asks this Court to enter an order: (1) finding that the County violated one or more sections of PERA; (2) requiring the County to reimburse Elliott for (a) her time attending **(Footnote continued on next page…)**

In sum, she contends that the County should not have reposted the position because the initial posting on May 21, 2014, complied with the CBA and a side agreement (which concerns posting, bidding and filling positions), and Elliott was the only applicant. Elliott also argues that the reposting was in retaliation for her filing a grievance. In response, both the Board and the County argue that Elliott does not have standing to enforce the terms of the CBA and side agreement, as only AFSCME, as the exclusive bargaining representative can seek to enforce the CBA and side agreement. The County maintains that Elliott's Charge is nothing more than an impermissible attempt to elevate a disagreement between Elliott and her union over its decision on whether her grievance had merit. We address Elliott's claims of PERA violations below.

**Section 1201(a)(3) of PERA**

Section 1201(a)(3) of PERA provides that "[p]ublic employers, their agents or representatives are prohibited from … [d]iscriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization." 43 P.S. § 1101.1201(a)(3). "[P]roof of an unfair labor practice charge under Section 1201(a)(3) requires a prima facie showing that the employer's actions were motivated by an unlawful

**(continued…)**

the step 3 hearing and the Board hearing and (b) her attorneys' fees and costs related to this proceeding; (3) finding the County liable for punitive damages; and (4) such other relief as may be just and proper. (Petition for Review, Petitioner's Brief at 13.) Elliott was awarded an 8-4 shift in December 2014. (R.R. at 58a.)

5

motive or that the employer displayed anti-union animus." *Lehighton Area School District v. Pennsylvania Labor Relations Board*, 682 A.2d 439, 442 (Pa. Cmwlth. 1996).

Elliott argues that the Board erroneously found that her grievance filed July 23, 2014, was untimely because she could not have filed a grievance prior to that time. Elliott also argues that the Board erroneously found that she did not allege retaliation as a result of any grievance and that such argument was untimely.

However, Elliott misconstrues the Board's findings, as the Board made no such findings. Rather, the Board correctly ruled that because Elliott's grievance was filed <u>after</u> the alleged retaliatory action (reposting the position), it could not be the basis for the County's actions. Indeed, a simple look at the timeline establishes that it is impossible for the County's reposting of the position to have been in retaliation for Elliott's grievance. Elliott testified that on July 14, 2014, she learned that she would be moving from the 8-4 shift, and she informed Major Klinovski at that time that she intended to file a grievance. Elliott filed her grievance on July 23, 2014. Both of these dates are *after* the position was reposted on June 24, 2014. Therefore, it is impossible that the reposting of the position was in retaliation for her filing the grievance, or even for her informing Major Klinovski of her intention to file a grievance. The party claiming that an unfair

practice has been committed has the burden of proving that charge. *Id*. Elliott cannot sustain her burden to prove the County violated section 1201(a)(3).[10]

**Section 1201(a)(4) of PERA**

Section 1201(a)(4) of PERA provides that "[p]ublic employers, their agents or representatives are prohibited from … [d]ischarging or otherwise discriminating against an employe because he has signed or filed an affidavit, petition or complaint or given any information or testimony under this act." 43 P.S. § 1101.1201(a)(4).

The hearing examiner found that Elliott did not establish a violation of section 1201(a)(4) because that section only addresses discrimination for activity before the Board and not for union activity that does not involve the Board's processes. The Board found that Elliott failed to take exception to the hearing examiner's findings under section 1201(a)(4) and therefore waived her right to challenge that.

The Board is correct that Elliott did not file exceptions to challenge the hearing examiner's findings under section 1201(a)(4) as required by 34 Pa.

---

[10] In her Charge, Elliott also alleged that the County retaliated against her because she asked for assistance in restraining a patient/inmate while on hospital detail on June 25, 2014. Elliott has abandoned this argument, because she does not discuss it in her brief. Additionally, she admitted at the hearing that this incident occurred *after* the position was reposted on June 24, 2014, and therefore, it could not serve as the basis for retaliation. (R.R. at 73a.)

Code § 95.98.[11] Because Elliott failed to take exception and thus preserve the issue for appeal, this Court is precluded from considering it.[12] *See* Pa. R.A.P. 1551 (stating court cannot consider an issue that was not raised before the government unit); *Township of Upper Saucon v. Pennsylvania Labor Relations Board*, 620 A.2d 71 (Pa. Cmwlth. 1993).

**Section 1201(a)(1) of PERA**

Section 1201(a)(1) of PERA prohibits public employers, their agents or representatives from "[i]nterfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act."[13]   43 P.S. §

---

[11] 34 Pa. Code § 95.98 requires that the exceptions state, among other things, (i) the specific issues, law or other portion of the decision to which exception is taken; (ii) identify the page or part of the decision to which exception is taken; and (iii) state the grounds for each exception.

[12] Nevertheless, even if Elliott had preserved this issue, she could not prevail. Elliott claims that after she notified Major Klinovski of her intent to file a grievance, the position was re-posted. This timeline is simply belied by the facts as outlined in the above discussion concerning section 1201(a)(3). The facts establish that the position was reposted prior to Elliott notifying Major Klinovski of her intent to file a grievance. Additionally, Elliott simply cannot make a prima facie case under section 1201(a)(4) because she failed to allege and prove that she filed an affidavit, petition or complaint under PERA or gave any information or testimony under PERA prior to the reposting of the position.

[13] Article IV consists of section 401, which concerns employee rights and provides:

> It shall be lawful for public employes to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision in a collective bargaining agreement.

43 P.S. § 1101.401.

1101.1201(a)(1). A violation of section 1201(a)(1) can be derivative or independent. *Neshannock Education Support Professionals PSEA/NEA*, 46 PPER 48 (2013). A derivative violation occurs "when an employer commits any violation of sections 1201(a)(2)-(9) …." *Id.*, slip op. at 5. Because Elliott did not prove a violation of either section 1201(a)(3) or (a)(4), she cannot establish a derivative violation of section 1201(a)(1).

An independent violation occurs when an employer engages in conduct that tends to interfere, restrain, or coerce reasonable employees in the exercise of their rights under Article IV of PERA. *See Neshannock Education*, slip op. at 5. Elliot argues that enforcement of the CBA (and side agreement) falls within the "mutual aid and protection" provision of Article IV, and thus, section 1201(a)(1) of PERA. Elliott argues that the Board ignored facts and failed to make necessary findings relevant to the initial posting—in particular, that the initial posting complied with the CBA and side agreement, and therefore, the initial posting was valid.[14]

Elliot fails to cite any legal authority in support of her argument. Reading Article IV in its entirety, the "mutual aid and protection" language in Article IV relates to activities that are in the genre of bargaining collectively. Here, Elliott has not alleged such a violation. Instead, her Charge alleges a violation of CBA Article XVI Section 5, which, in essence, is an allegation of

---

[14] Both the Board and the County argue that Elliott does not have standing to enforce the CBA, because only the Union, as the exclusive bargaining representative for correctional officers, can do so. Elliott states that the Board and the County have waived the issue of her standing. Because of our disposition, it is not necessary for us to address this.

breach of contract. The Board "exists to remedy violations of statute, *i.e.,* unfair labor practices, and not violations of contract." *AFSCME, District Council 47, Local 2187 v. Pennsylvania Labor Relations Board*, 41 A.3d 213, 217 (Pa. Cmwlth. 2012). "Where a breach of contract is alleged, it should be resolved by an arbitrator using the grievance procedure set forth in the parties' collective bargaining agreement."[15] *Id.* Accordingly, Elliott has failed to establish an independent violation of section 1201(a)(1).

Based on the foregoing, we conclude that Elliott has failed to establish that the County committed any unfair practices. Therefore, we affirm the Board's order.

_____
JULIA K. HEARTHWAY, Judge

_____

[15] We acknowledge that the Board is empowered to review an agreement to determine whether the employer has clearly repudiated its provisions, because such repudiation may constitute both an unfair practice and a breach of contract. *AFSCME, District Council 47*. However, Elliott has neither alleged, nor do the facts constitute, a clear repudiation.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Elease M. Elliott, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 588 C.D. 2016 |
| | : | |
| Pennsylvania Labor Relations | : | |
| Board, | : | |
| Respondent | : | |

# O R D E R

AND NOW, this 2nd day of March, 2017, the order of the Pennsylvania Labor Relations Board is hereby affirmed.

_____
JULIA K. HEARTHWAY, Judge