COMMONWEALTH of Pennsylvania,
Petitioner,

v.

PENNSYLVANIA LABOR
RELATIONS BOARD,
Respondent.

Commonwealth Court of Pennsylvania.

Argued April 1, 2003.

Decided June 23, 2003.

Lisa K. Essman, Harrisburg, for petitioner.

Jennifer E. Will, Harrisburg, for respondent.

Thomas W. Jennings, Philadelphia, for intervenor, PA Corrections Officers Association.

BEFORE: COHN, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Commonwealth of Pennsylvania (Commonwealth) petitions for review of a decision of the Pennsylvania Labor Relations Board (Board) which sustained in part the Exceptions filed by the Pennsylvania State Corrections Officers Association (Association) and vacated the proposed decision and order of the Board's hearing examiner, concluding that the Commonwealth had committed unfair practices in violation of Section 1201(a)(1) of the Public Employe Relations Act

(PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.1201(a)(1).[1]

This matter of first impression in Pennsylvania presents the sole question of whether an employee during an investigatory interview has a right to ask to consult with his union representative prior to answering a question.

In 2001, the Board certified the Association as the exclusive representative of a bargaining unit comprised of corrections officers employed by the Commonwealth. On January 11, 2002, a representative of the Commonwealth, Lieutenant George Funk (Lt. Funk), phoned Todd Harris (Harris), a corrections officer for the Commonwealth, and informed him that he was going to be conducting a fact-finding as part of an investigation into whether or not Harris was to be disciplined for having violated a code of ethics when he reported being injured on the job.

An Association representative, Clair H. Boring, Jr. (Boring), represented Harris at the fact-finding. Boring testified that he "never got an official notification; just rumors from floating around work" regarding what the fact-finding was about. Boring did meet with Harris prior to the factfinding.

During the fact-finding, Funk asked Harris if he ever had a back injury prior to the incident in question or had he been treated for a back injury. At this point, Harris asked Funk if he could take a break to confer with Boring before answering the question. Funk directed Harris to answer the question first. There was a debate as to whether Harris had to answer the question first. Boring again asked for a break in order to confer with his client. This was also declined by Funk who again directed Harris to answer the question. Harris answered the question and then Funk gave them a break to meet in private. After the meeting, Funk finished the fact-finding. At the end of the fact-finding, Funk asked Harris and Boring if they had anything to add. Harris gave a closing statement and indicated that he had a prior work-related back injury in 1996.

On January 18, 2002, the Association filed a charge of unfair labor practices with the Board alleging that the Commonwealth violated Harris' rights under Section 1201(a)(1) and (5) of PERA by refusing to allow Harris to consult with a union representative during an investigatory interview. On April 10, 2002, the Board hearing examiner held a hearing on the matter. On May 28, 2002, the hearing examiner held that Harris had received the union representation to which he was entitled under PERA and dismissed the charge. The Association filed exceptions to the proposed decision and order.

■ On October 15, 2002, the Board issued a final order sustaining the exception in part and holding that the Commonwealth violated Harris' rights under Section 1201(a)(1) of PERA when it declined to allow him to privately consult with his union representative prior to completing the answer to a question that had been posed to him. The Commonwealth filed a motion for reconsideration which was denied on November 19, 2002. The Commonwealth now petitions our Court for review.[2]

1. PERA has a parallel provision located in Section 8(a)(1) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1), as amended, 61 Stat. 140.

2. Our review of a final order of the Board is limited to determining whether an error of law was committed, constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. *Har-*

The Commonwealth contends that the Board erred: (1) in concluding that the Commonwealth violated Harris' right to union representation by declining to allow him to meet privately with his union representative prior to completing the answer to a question that had been posed to him during an investigatory interview; (2) in ignoring findings of fact made by the hearing examiner which support the conclusion that Harris received the union representation in which he was entitled; and (3) in sustaining exceptions to the proposed decision and order and reversing the hearing examiner's conclusion that the Commonwealth did not violate Section 1201(a)(1) of PERA.

Section 1201(a)(1) of PERA provides that "Public employers, their agents or representatives are prohibited from: (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act." 43 P.S. § 1101.1201(a)(1).

■ The parties agree that Harris had a right to union representation during the investigatory interview pursuant to *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). The parties also agree that Harris had a right to a private consultation with the union representative prior to the investigatory interview. *Fraternal Order of Police, Conference of Pennsylvania Liquor Control Board Lodges v. Commonwealth of Pennsylvania, Pennsylvania State Police*, 28 Pa. Pub. Emp. R. ¶ 28203 (Final Order, 1997). The specific question here is whether Harris had a right to consult his union representative prior to answering a question that had been asked during the investigatory interview.

In *Weingarten*, the seminal case on investigatory interviews, an employee of Weingarten was interviewed for suspicion of theft without a union representative present, despite having previously requested one. She was not disciplined but her union filed an unfair labor practice with the National Labor Relations Board (NLRB) contending that her employer's actions violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), that the employee had a right to union representation at the interview because she requested it. The United States Supreme Court found that the Board was correct in its interpretation of the NLRA. The United States Supreme Court determined that employees have a right to union representation in an investigatory interview based upon the statutory guarantee that employees may act in concert for mutual aid and protection, that the employee's right to union representation is limited to situations where the employee reasonably believes the investigation may result in disciplinary action and where that right does not interfere with the employer's legitimate prerogative to continue his investigation without interviewing the employee. In order to exercise that right, the employee must request union representation. Finally, the employer has no duty to bargain with the union representative that may be permitted to attend the interview. *Weingarten*, 420 U.S. at 256–260, 95 S.Ct. 959.

When there are no Pennsylvania cases on point, we have been encouraged by the Supreme Court of Pennsylvania to follow the NLRB cases interpreting provisions of the NLRA similar to the PERA. *Appeal of Cumberland Valley Sch. Dist.*, 483 Pa. 134, 394 A.2d 946 (1978).

In *System 99 v. Walter Manning*, 289 N.L.R.B. 723, 131 L.R.R.M. 1226 (1988),

*baugh v. Pennsylvania Labor Relations Board,*

107 Pa.Cmwlth. 406, 528 A.2d 1024 (1987).

Walter Manning filed an unfair labor practice which alleged among other things that System 99 had discharged him in violation of Section 8(a)(1) of the NLRA as Manning was denied a private consultation with a union representative during his disciplinary interview. This case provides in pertinent part as follows:

> [I]t is commonplace for employers to tell employees that their "rights" in a given situation are limited to a single set of alternatives. And it is equally a phenomenon common to industrial life that employees will mistrust such "either/or" statements as correctly expressing their legal or contractual options. It is therefore evident that, as an exercise of the Section 7 right of employees to engage in mutual aid and protection, an employee may wish to consult with an employee representative before accepting an employer's ultimatum; and, being denied that request, that he may wish to "dummy up" in the face of further attempts by his employer to question him.
>
> . . .
>
> Respondent was obliged to provide Manning with an opportunity to consult with Pinkston once Manning requested that right.

*Id.* at 727. The NLRB concluded that "by denying to Walter Manning the right to consult privately with a fellow employee before deciding how to respond to Respondent's request that he take a sobriety test, Respondent has interfered with, restrained, and coerced an employee in the exercise of the rights guaranteed in Section 7 of the Act and thereby has engaged in and is engaging in unfair labor practices within the meaning of Section 8(a)(1) of the Act." *Id.* at 728.

This case is on point with the present controversy, as both men were being questioned by their employers, both had representatives present and both were denied their request to consult with their representative during the interview but after the question was already asked. The Commonwealth argues that the *Manning* case only states that there was a denial of *Weingarten* rights before the interview began; this is not a correct interpretation of the case. The Board was correct in relying on this case in its decision.[3]

Permitting Harris to consult with Boring does not deprive the Commonwealth as an employer of its "legitimate interest in maintaining some control over the investigatory process." It remains the employer's prerogative to decide whether to conduct an investigatory interview with employee at all, to choose the setting, to formulate the questions and to decide whether or not it will rely on the responses elicited from the employee. "*Weingarten* permits 'assistance and counsel' to the employe being interrogated." *New Jersey Bell Telephone Company and Local 827 International Brotherhood of Electrical Workers,* 308 N.L.R.B. 277, 141 L.R.R.M. 1017 (1992).[4]

We note however, that an employee is not permitted to interfere with the interview process by using delay tactics. In

---

**3.** The Commonwealth also relies on *Southwestern Bell Telephone v. NLRB,* 667 F.2d 470 (5th Cir.1982), which involved the question of whether the union representative could offer a response and explanation to a question in lieu of the employe under investigation responding. At no time did the employee attempt to solicit advice or counsel from his representative. This case does not apply to our present controversy.

**4.** The issue of not being permitted to consult with union representatives on company time does not relate to an employer conducted investigatory interview. This rule in and of itself would violate the *Weingarten* rule as the employee would not be permitted to consult with the representative prior to the meeting or during it.

order to curtail this action, we must assert that the employee may only ask for his representative's counsel after the question has been posed to him if there are reasonable grounds for doing so. An example of such reasonable grounds would only be when a significant question is asked such as one that could result in the discipline of the employee or when the question asked may be interpreted in more than one way.[5]

The responsibility to adapt PERA to changing patterns of industrial life is entrusted to the Board. *Weingarten,* 420 U.S. at 266, 95 S.Ct. 959. "It is the province of the Board, not the courts, to determine whether or not the "need" exists in light of changing industrial practices and the Board's cumulative experience in dealing with labor-management relations. For the Board has the "special function of applying the general provisions of the Act to the complexities of industrial life ..., and its special competence in this field is the justification for the deference accorded its determination." (Citations omitted). *Weingarten,* 420 U.S. at 266, 95 S.Ct. 959. The Board in the present controversy has made a fair and reasoned decision that does not exceed the reach of its authority under PERA.

Accordingly, we affirm.

Judge COHN concurs in result only.

### ORDER

AND NOW, this 23rd day of June, 2003 the order of the Pennsylvania Labor Relations Board in the above captioned matter is affirmed.

---

**5.** " '[R]easonable ground' will of course be measured ... by objective standards under all the circumstances of the case.... [T]he Court announced that it would reject any rule that requires a probe of an employee's subjective motivations as involving an endless and unreliable inquiry...." (Citations omitted). *Weingarten,* 420 U.S. at 258, fn. 5, 95 S.Ct. 959.