IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Department of Corrections, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Pennsylvania Labor Relations Board, | : | No. 1369 C.D. 2022 |
| Respondent | : | Argued: December 4, 2023 |


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge


OPINION
BY JUDGE FIZZANO CANNON                  FILED: January 18, 2024


        The Department of Corrections (Employer) petitions for review of a Final Order of the Pennsylvania Labor Relations Board (Board) issued in *Pennsylvania State Corrections Officers Association v. Pennsylvania Department of Corrections*, No. PERA-C-21-20-E (Nov. 15, 2022) (Final Order). The Board concluded that Employer violated Section 1201(a)(1) of the Public Employe Relations Act (PERA),[1] 43 P.S. § 1101.1201(a)(1),[2] by refusing a union representative's request for a private caucus with an employee when a new line of inquiry arose during an investigative interview. Upon review, we affirm the Board's Final Order.

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.

[2] Section 1201(a)(1) prohibits public employers from "[i]nterfering, restraining or coercing employes in the exercise of the rights guaranteed in [the PERA]." 43 P.S. § 1101.1201(a)(1).

# I. Background

Jason Henry (Employee) serves as a Corrections Monitor at Progress Community Corrections Center (PCCC). Final Order at 1. In February 2021, Allen Lynch (Security), a Security Lieutenant at PCCC, summoned Employee to an investigative interview on behalf of Employer concerning allegations that Employee had made racially insensitive remarks to coworkers. *Id.*

Before the interview began, Employee asked that Robert Hendricks (Union Representative), the local vice president of the Pennsylvania State Corrections Officers Association (Union),[3] be present as Employee's *Weingarten*[4] representative. Final Order at 1. Security granted the request, advised Employee and Union Representative of the purpose of the interview, and allowed them to have a private caucus before starting the interview. *Id.*

The initial focus of the interview was on whether Employee had actually made the alleged remarks to his coworkers. Final Order at 4. After answering the first question in the interview, Employee requested a further private caucus with Union Representative, which was granted. Final Order at 2. Employee did not request any additional private caucus during the rest of the interview. *Id.* However, at some point during the interview, Security asked Employee why his coworkers would report that he had made the alleged racially insensitive remarks if he did not recall making them; at that point, the focus of the interview shifted from

---

[3] Union has intervened as a party before this Court.

[4] In *National Labor Relations Board v. Weingarten, Inc.*, 420 U.S. 251 (1975), the United States Supreme Court held that employees have the right to union representation at investigatory interviews that they reasonably believe may result in discipline. The Pennsylvania Supreme Court has recognized, with approval, the Board's adoption of the *Weingarten* rule as applicable to PERA cases. *Pa. Off. of Admin. v. Pa. Lab. Rels. Bd.*, 916 A.2d 541, 547, 551 (Pa. 2007).

what Employee said to whether Employee was truthful and credible in answering Security's interview questions. *Id.* at 2 & 4. Union Representative requested a private caucus with Employee, which was denied. *Id.* at 2. The interview continued thereafter until Employee had answered all of Security's questions. *Id.* Employer subsequently found the coworkers' allegations to be substantiated and issued Employee a written reprimand. *Id.*

The Union thereafter filed an unfair labor practice charge asserting that Employer violated Section 1201(a)(1) of the PERA by denying Union Representative's request to caucus with Employee during the investigative interview. Final Order at 2. Following a hearing held in August 2021, a Hearing Examiner concluded that Employer had violated Section 1201(a)(1) by refusing to allow Employee to caucus with his *Weingarten* representative.[5] *Id.*

Employer filed exceptions with the Board, arguing that Security properly refused a caucus request by a *Weingarten* representative because any such request must be made by the employee personally. Final Order at 3. The Board rejected Employer's argument, reasoning:

> The fact that . . . [Union Representative] made the request to caucus does not destroy . . . [Employee's] right to confer with his *Weingarten* representative. Once the request for a *Weingarten* representative is made and has been granted, the *Weingarten* representative steps into the interview with certain statutory rights to provide mutual aid and protection, assistance and representation, as permitted by law on behalf of the employe[e].

*Id.*

---

[5] However, the discipline imposed on Employee was not based on information obtained in the investigatory interview. Final Order at 3. Accordingly, the Hearing Examiner issued a cease and desist order but did not provide any remedial relief. *Id.*

Employer also asserted that Union Representative, in his caucus request, exceeded the scope of his role as a *Weingarten* representative by attempting to transform the investigative interview into an adversarial proceeding. Final Order at 4. The Board rejected this assertion as well, explaining:

> It is the function of the [H]earing [E]xaminer, who is in a position to view the witnesses' testimony first-hand, to determine the credibility of witnesses and to weigh the probative value of the evidence presented at the hearing . . . . The [H]earing [E]xaminer may accept or reject the testimony of any witness in whole or in part . . . . The Board will not disturb the Hearing Examiner's credibility determinations absent the most compelling of circumstances . . . .
>
> In this case, the Hearing Examiner did not credit the testimony of [Employer's witnesses] concerning the alleged adversarial conduct of . . . [Union Representative] during the investigatory interview. The Hearing Examiner concluded that . . . [Union Representative's] request to caucus with . . . [Employee] during the investigatory interview was reasonable and that the request [did] not transform the interview into an adversarial contest, nor would it deprive [Employer] of its ability to control the investigation . . . . [Employer] has failed to present compelling reasons to warrant reversal of the Hearing Examiner's credibility determinations . . . .

*Id.* (internal quotation marks and citations omitted).

> Ultimately, the Board dismissed Employer's exceptions, concluding:

> [Security's] question regarding why . . . [Employee's] coworkers would report that he made racially insensitive comments if, in fact, he did not make such remarks changed the focus of the interview. Thus, the Hearing Examiner found that the question posed to . . . [Employee] for which a consultation was sought was a substantial question regarding his veracity which could lead to additional discipline.[]

4

> When the questioning of . . . [Employee] deviated from whether he made the alleged racist remarks, to an inquiry as to the truthfulness of his answers, the new line of questioning triggered . . . [Employee's] right to confer with his [U]nion [R]epresentative prior to answering the question . . . . Therefore, it was permissible for . . . [Union Representative], as the *Weingarten* representative, to request a caucus with . . . [Employee] prior to answering the question to adequately provide assistance and knowledgeable representation with regard to the new line of inquiry . . . .

Final Order at 4-5 (citing *Pac. Tel. & Tel. Co. v. Nat'l Lab. Rels. Bd.*, 711 F.2d 134, 137 (9th Cir. 1983) (*Pacific Telephone*) (holding that "once union representation has been afforded, the representative may speak for the employee he represents and *either the union representative or the employee may make the request* for [a] pre[-]interview conference")) (emphasis added) (footnote and additional citations omitted).

## II. Issue

On appeal,[6] Employer does not challenge Employee's right to a *Weingarten* representative at the investigative interview. Moreover, as the Board observed, Employer "did not except to the Hearing Examiner's conclusion that . . . [Security's] question concerning the veracity of . . . [Employee] fundamentally changed the nature of the interview . . . ." Final Order at 4 n.2. Thus, Employer does not dispute that the private caucus request would have been appropriate if made by Employee himself. Therefore, the sole issue for our review is the legal question

---

[6] Our review of a final order of the Board is limited to determining whether the Board committed an error of law or violated constitutional rights or whether necessary findings of fact were supported by substantial evidence. *Com. v. Pa. Lab. Rels. Bd.*, 826 A.2d 932, 933 n.2 (Pa. Cmwlth. 2003) (citing *Harbaugh v. Pa Lab. Rels. Bd.*, 528 A.2d 1024 (Pa. Cmwlth. 1987)).

of whether a *Weingarten* representative may request a private caucus at an appropriate point during an investigative interview or whether such a request must come from the employee personally.

### III. Discussion

The seminal case establishing the right to a union representative during an investigatory interview is *National Labor Relations Board v. Weingarten, Inc.*, 420 U.S. 251 (1975). In *Weingarten*, the United States Supreme Court upheld a decision of the National Labor Relations Board (NLRB) that an employer violated an employee's rights under the National Labor Relations Act (NLRA)[7] by denying her request to have a union representative present during an investigative interview that could have led to discipline.

The parties do not dispute that the rationale of *Weingarten* applies to cases arising under the PERA. *See Off. of Admin. v. Pa. Lab. Rels. Bd.*, 916 A.2d 541, 547, 551 (Pa. 2007). They do not dispute that employee rights arising under *Weingarten* include an employee's right to request a private caucus with a union representative where appropriate; nor do they dispute that the caucus request at issue here would have been appropriate if made by Employee himself. *See, e.g.*, *Com. v. Pa. Labor Rels. Bd.*, 826 A.2d 932, 934-36 (Pa. Cmwlth. 2003) (explaining that an employee has a right to have union representation in an investigatory interview and to consult with that representative before answering a question asked in the interview "when a significant question is asked such as one that could result in the discipline of the employee or when the question asked may be interpreted in more than one way") (citations omitted). Rather, the parties' dispute relates solely to the effect of

---

[7] 29 U.S.C. §§ 151-168.

6

*Weingarten* on the issue presented here. Employer insists that *Weingarten* provides only a limited right to union representation and that only the employee, not the union, may request such representation, including a private caucus with a union representative. The Board and the Union counter that a right to a private caucus is part of the right to have a union representative present during an interview to protect an employee's rights; therefore, it does not matter whether a caucus request comes from the employee or the union representative.

In *Weingarten*, an employee was interviewed concerning two different accusations of wrongdoing, both of which were ultimately determined to be unfounded. 420 U.S. at 254-56. The employee requested the presence of a union representative in relation to both accusations, but her employer denied both requests. *Id.* Thus, unlike the instant matter, *Weingarten* did not relate specifically to a caucus request, and there was no attempt by a union representative to invoke rights on behalf of an employee. Accordingly, we must determine what guidance, if any, the Supreme Court's analysis in *Weingarten* provides here.

Quoting with approval a decision of the NLRB, the Supreme Court in *Weingarten* observed:

> [I]t is a serious violation of the employee's individual right to engage in concerted activity by seeking the assistance of his statutory representative if the employer denies the employee's request and compels the employee to appear unassisted at an interview which may put his job security in jeopardy. Such a dilution of the employee's right to act collectively to protect his job interests is . . . unwarranted interference with his right to insist on concerted protection, rather than individual self-protection, against possible adverse employer action.

420 U.S. at 257 (internal citations and quotation marks omitted). The Court went on to state, however, that "the right arises only in situations where the employee

requests representation. In other words, the employee may forgo his guaranteed right and, if he prefers, participate in an interview unaccompanied by his union representative." *Id.* Employer seizes upon this latter language in *Weingarten* as the basis for its insistence that only the employee himself, not his union representative, may request a private caucus.

As this Court has explained, "[w]hen there are no Pennsylvania cases on point, we have been encouraged by the Supreme Court of Pennsylvania to follow the NLRB cases interpreting provisions of the NLRA similar to the PERA." *Com. v. Pa. Lab. Rels. Bd.*, 826 A.2d at 934 (citing *Appeal of Cumberland Valley Sch. Dist.*, 394 A.2d 946 (Pa. 1978)). Here, although there is no prior decision on point under the PERA, the United States Court of Appeals for the Ninth Circuit addressed an analogous issue under the NLRA in *Pacific Telephone*. There, in two consolidated cases, union representatives attending investigative interviews with employees requested private caucuses with the employees before the interviews, but the employer denied both requests. 711 F.2d at 135-36. The NLRB found that the employer had violated the employees' rights under *Weingarten* by denying the caucus requests. *Id.* at 136.

On appeal, the employer in *Pacific Telephone*, like Employer here, pointed to the language in *Weingarten* stating that an employee's right to representation in an investigative interview "arises only in situations where the employee requests representation." *Weingarten*, 420 U.S. at 257, *cited in Pac. Tel.*, 711 F.2d at 137. The employer argued that the quoted language required, by extension, that the employee, not the union representative, must assert any caucus request. *Pac. Tel.*, 711 F.2d at 137. The Court of Appeals squarely rejected that argument, explaining:

8

The . . . question presented by the petition is whether the request for a conference must come from the employee himself. Here, . . . the request came from the union representative . . . . [T]he Supreme Court has stated that the right to union representation at an investigatory interview as defined by the [NLRB] is a right which must be requested by the employee and which the employee may choose to forego [sic]. *See Weingarten*, 420 U.S. at 257. We read this to mean that the employer need not suggest that the employee have union representation and not, as Pacific Telephone argues, that only the employee himself may so request. In our judgment, once union representation has been afforded, the representative may speak for the employee he represents and either the union representative or the employee may make the request for pre-interview conference.

*Id.*

We find *Pacific Telephone* persuasive here. *Weingarten* contains sweeping language supporting employee rights to union representation *and participation*, at least to some extent, in employer interviews. The *Weingarten* Court observed:

[A]n employee in seeking to have the assistance of his union representative at a confrontation with his employer [has] the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection . . . . This is true even though the employee alone may have an immediate stake in the outcome; he seeks []aid or protection[] against a perceived threat to his employment security. The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly.[] The representative's presence is an assurance to other employees in the bargaining unit that they, too, can obtain his aid and protection if called upon to attend a like interview.

. . . .

9

> Requiring a lone employee to attend an investigatory interview which he reasonably believes may result in the imposition of discipline perpetuates the inequality the [NLRA] was designed to eliminate, and bars recourse to the safeguards the [NLRA] provided to redress the perceived imbalance of economic power between labor and management . . . .
>
> . . . .
>
> A single employee confronted by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors. A knowledgeable union representative could assist the employer by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident occasioning the interview. Certainly his presence need not transform the interview into an adversary contest . . . .

*Weingarten*, 420 U.S. at 260-63 (internal footnote, citations, and quotation marks omitted).

We conclude that the broad language from *Weingarten* discussing employee rights is applicable here. In particular, we are persuaded by the Supreme Court's suggestions that a union representative's presence includes participation and that an unrepresented employee may be led by fear or ignorance to fail to protect his own rights. A knowledgeable union representative is indispensable in such circumstances, yet requiring such a representative to stand mute when the employee's right should be asserted is tantamount to denying representation altogether. Accordingly, consistent with our Supreme Court's recommendation to follow NLRB cases interpreting provisions of the NLRA similar to the PERA, we hold that a *Weingarten* representative has a right to request a private caucus with an employee to the same extent that the employee himself could make such a request.

10

To the extent that Employer suggested Union Representative's request was properly denied because he was adversarial or disruptive in requesting a private caucus with Employee during Employer's investigative interview, the Hearing Examiner found that assertion not credible, as set forth above. Absent any such inappropriate conduct, Union Representative was entitled as Employee's representative to request a private caucus at appropriate times. Specifically, in this case, Union Representative, as well as Employee, had the right to request a caucus at the point of the interview where the subject matter of the questions shifted to a new issue not the subject of a previous caucus, and which could have resulted in additional discipline.

Moreover, to the extent Employer suggests that allowing a union representative to request a private caucus when the focus of an interview shifts to a new issue will expand the current status of employee rights, we acknowledge the United States Supreme Court's approval in *Weingarten* of the NLRB's "evolutional approach" to interpreting and applying the NLRA in changing employment climates:

> [I]ts earlier precedents do not impair the validity of the [NLRB's] construction . . . . The use by an administrative agency of the evolutional approach is particularly fitting. To hold that the [NLRB's] earlier decisions froze the development of this important aspect of the national labor law would misconceive the nature of administrative decisionmaking. Cumulative experience begets understanding and insight by which judgments . . . are validated or qualified or invalidated. The constant process of trial and error, on a wider and fuller scale than a single adversary litigation permits, differentiates perhaps more than anything else the administrative from the judicial process.
>
> . . . .
>
> It is the province of the [NLRB], not the courts, to determine whether or not the need [for further interpretation] exists in light of changing industrial

11

practices and the [NLRB's] cumulative experience in dealing with labor-management relations. For the [NLRB] has the special function of applying the general provisions of the Act[NLRA] to the complexities of industrial life . . . , and its special competence in this field is the justification for the deference accorded its determination . . . . Reviewing courts are of course not to stand aside and rubber stamp [NLRB] determinations that run contrary to the language or tenor of the [NLRA]. But the [NLRB's] construction here, while it may not be required by the [NLRA], is at least permissible under it, and insofar as the [NLRB's] application of that meaning engages in the difficult and delicate responsibility of reconciling conflicting interests of labor and management, the balance struck by the [NLRB] is subject to limited judicial review . . . . In sum, the [NLRB] has reached a fair and reasoned balance upon a question within its special competence, its newly arrived at construction of [the NLRA] . . . .

*Weingarten*, 420 U.S. at 265-67 (internal citations and quotation marks omitted).

This analysis is equally applicable to the Board's statutory rights and duties in interpreting and applying the PERA. *See Com. v. Pa. Labor Rels. Bd.*, 826 A.2d at 936 (stating that "[t]he responsibility to adapt [the] PERA to changing patterns of industrial life is entrusted to the Board" and citing *Weingarten*, 420 U.S. at 266). Accordingly, the absence of prior Board decisions addressing the right of a *Weingarten* representative was no impediment to the Board's authority to do so here, and the Board was within its discretion to conclude that Union Representative properly requested a private caucus with Employee in the circumstances of this case, *i.e.*, where the interview's focus shifted to a new issue that could result in additional discipline.

12

**IV. Conclusion**

Based on the foregoing discussion, we affirm the Board's Final Order.


_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Corrections, : 
                         Petitioner : 
                         : 
       v. : 
                         : 
Pennsylvania Labor Relations Board, :   No. 1369 C.D. 2022 
                     Respondent : 

## O R D E R

AND NOW, this 18th day of January 2024, the Final Order of the Pennsylvania Labor Relations Board dated November 15, 2022 is AFFIRMED.

_____

CHRISTINE FIZZANO CANNON, Judge